Filed 12/9/16; pub. order 1/5/17 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| PAMELA SILVA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SEE'S CANDY SHOPS, INC.,<br><br>    Defendant and Respondent. | D068136<br><br><br><br>(Super. Ct. No. 37-2009-00100692-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa M. Trapp, Judge.  Reversed in part and affirmed in part.

Sullivan Law Group, William B. Sullivan and Eric K. Yaeckel, for Plaintiff and Appellant.

Jackson Lewis, David S. Bradshaw, James T. Jones, Evan D. Beecher and Paul F. Sorrentino, for Defendant and Respondent.

Pamela Silva filed an action against her former employer, See's Candy Shops, Inc., alleging wage and hour violations.  Silva brought the action in her individual capacity, on behalf of a class of See's Candy employees, and on behalf of aggrieved workers under the

Private Attorney General Act of 2004 (PAGA).  The court certified a class on Silva's claims challenging two of See's Candy's policies pertaining to the calculation of employee work time:  (1) a rounding policy, which calculates timeclock punches to the nearest tenth of an hour; and (2) a grace-period policy, which permits employees to clock in 10 minutes before and after a shift, but calculates work time from the employee's scheduled start/end times.

In a prior appeal, we granted See's Candy's writ petition challenging the trial court's dismissal of See's Candy's affirmative defense that its rounding policy was lawful. (*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889 (*See's Candy*).) After remand, See's Candy successfully moved for summary adjudication on Silva's PAGA cause of action.  In a later proceeding, the court granted summary judgment in See's Candy's favor on all of Silva's remaining claims.

In this appeal, Silva challenges the summary adjudication order on her PAGA claim and the summary judgment on all remaining causes of action.  She raises numerous contentions.  We determine the court erred in granting summary judgment with respect to certain of Silva's individual claims, but the court properly entered judgment in See's Candy's favor on all remaining claims, including the PAGA cause of action and the class-certified claims.

2

FACTUAL AND PROCEDURAL SUMMARY

*Background*

In October 2009, Silva filed her original complaint alleging wage and hour violations, including See's Candy's failure to pay proper compensation for work performed.

The same day, Silva sent a letter to the Labor and Workforce Development Agency (LWDA) informing the agency, as required by PAGA's notice requirements, of her claim that See's Candy violated numerous Labor Code sections, including by failing to provide statutorily compliant meal and rest periods, overtime compensation, itemized wage statements, compensation for all hours worked, and reimbursement for business expenses. (See Lab. Code, §§ 2699.3, subd. (a)(1), 201, 203, 204, 221, 226, 226.7, 510, 512, 1194, 1199, 2802.)[1] On November 17, 2009, the LWDA responded that "after review," the agency "does not intend to investigate the allegations."

Five days later, Silva filed her first amended complaint (the operative complaint here), alleging three causes of action. In the first two causes of action, Silva alleged See's Candy violated California wage and hour laws and the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.) by failing to: (1) pay for all work performed; (2) pay overtime compensation; (3) maintain lawful meal and rest period policies; (4) pay for each meal or rest period that was not provided; (5) reimburse employees for business related expenses; and (6) provide accurate itemized wage statements. Silva brought these

---

[1] All further statutory references are to the Labor Code, unless otherwise specified.

claims on behalf of herself and on behalf of a putative class of current and former See's Candy workers.

In the third cause of action, Silva alleged a PAGA claim, seeking PAGA statutory penalties for the alleged Labor Code violations.  (§ 2698 et seq.)  In this cause of action, Silva alleged See's Candy "committed the above-referenced and incorporated wage and hour violations against Plaintiffs and the class members."  She also specifically identified several alleged statutory violations, including the failure to:  (1) pay full compensation due "by improperly 'rounding' the time worked by employees," citing sections 204, 510, and 1194; (2) provide required rest and meal periods, citing sections 226.7 and 512; (3) provide statutorily-compliant itemized wage statements, citing section 226; and (4) indemnify employees for necessary business expenditures or losses, citing section 2802.

In its amended answer, See's Candy denied Silva's allegations and asserted numerous affirmative defenses, including that its employees were fully and fairly compensated under its rounding policy and grace-period policy, and that these policies were consistent with state and federal laws.

Based on Silva's request, the court certified a class only on the issues of whether See's Candy's rounding and grace-period policies violate applicable law.  The certified class consisted of California workers who were employed by See's Candy "from October 20, 2005 to the present."  The court certified the class on two issues:  (1) "Whether class members suffered a loss of compensation when they clocked in and out on the . . . timekeeping system utilized by See's [Candy] which rounded time to the nearest six minutes" (the rounding policy); and (2) "Whether class members suffered a loss of

4

compensation when they clocked in or out on the . . . timekeeping system utilized by See's [Candy] during the 'grace period,' defined as up to ten minutes before their scheduled start times and up to ten minutes after their scheduled quitting times" (the grace-period policy).

Silva then moved for summary adjudication on See's Candy's rounding-policy *affirmative defense*. Silva argued See's Candy's rounding policy violates California law requiring an employer to fully compensate an employee every two weeks and pay premium wages for overtime work. The court (Judge Joel Pressman) agreed, granted the motion, and dismissed See's Candy's rounding defense.

See's Candy successfully petitioned for a writ of mandate in this court. (*See's Candy, supra*, 210 Cal.App.4th 889.) Adopting the federal standard and the rule used by California's regulatory agency, we held an employer is entitled to use a rounding policy if the policy "is fair and neutral on its face" and " 'is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' " (*Id.* at p. 907.) Applying this standard, we found that Silva did not meet her summary adjudication burden to show See's Candy's rounding policy was unlawful as a matter of law, and even if she did meet this burden, See's Candy's evidence showed the existence of triable issues of fact. (*Id.* at pp. 907-913.) Because See's Candy had not affirmatively moved for summary adjudication or judgment, we did not consider whether See's Candy was entitled to judgment based on its own submitted evidence.

*Summary Adjudication on PAGA Claim*

While this writ proceeding had been pending in this court, See's Candy moved in the trial court for summary adjudication on Silva's PAGA claim seeking penalties for the alleged Labor Code violations. In this motion, See's Candy asserted separate arguments regarding two portions of Silva's PAGA claim: (1) the portion of the PAGA claim challenging See's Candy's rounding and grace-period polices; and (2) the portion of the PAGA claim asserting other statutory violations (e.g., mealtime violations, failure to reimburse for business expenses).

*On the portion of Silva's PAGA claim challenging See's Candy's rounding and grace-period policies*, See's Candy argued it was entitled to judgment on this claim because: (1) Silva's notice to the LWDA was insufficient to notify the agency of *these* challenges (see § 2699.3, subd.(a)(1)); (2) PAGA does not govern challenges to rounding and grace-period policies; (3) Silva's position conflicted with the Labor Commissioner's enforcement policies; and (4) PAGA is unconstitutional.

*On the portion of the PAGA claim seeking relief for the other alleged labor violations,* See's Candy argued these claims were without merit based on See's Candy's discovery responses reflecting that these claims were no longer "at issue."

Silva opposed the motion on numerous grounds. Regarding the rounding/grace-period policies, Silva argued the LWDA notice was adequate and that she was not required to more specifically detail the grounds of the claim in the notice, particularly because these issues pertain to an affirmative defense and because she was unaware of

these grounds (alleged improper rounding/grace-period timekeeping policies) when she first sent the LWDA notice.

Regarding the other alleged Labor Code violations, Silva argued she never abandoned these claims, and produced evidence of her counsel's January 2010 letters to defense counsel indicating the grace-period and rounding policy challenges were not the only claims being asserted in her complaint. She did not, however, produce any facts supporting the validity of these alleged Labor Code violations.

Shortly after the parties filed these briefs, the trial court stayed the matter pending the completion of the writ proceeding. Our decision in *See's Candy* then became final in February 2013. After remand, the trial court gave the parties leave to file supplemental briefs given the lengthy passage of time. In her supplemental brief, Silva focused only on her PAGA claims based on the rounding/grace-period claim, and did not present any argument or evidence on the individual claims.

After considering the parties' submissions and conducting a hearing, the court (Judge Randa Trapp) granted summary adjudication on Silva's PAGA cause of action. On the portion of the PAGA claim challenging See's Candy's rounding and grace-period policies, the court found See's Candy was entitled to prevail as a matter of law because Silva's LWDA notice was defective as it was not sufficiently specific with respect to these particular challenges. (See § 2699.3, subd. (a)(1).) On the PAGA claims based on other alleged Labor Code violations, the court found that although Silva had alleged various wage and hour violations in her PAGA claim, Silva's interrogatory responses

showed she had "abandoned" these claims. The court also noted that Silva had certified a class only "as to the issues of rounding and grace periods."

*See's Candy's Summary Judgment Motion*

Ten days later, See's Candy moved for summary judgment on the remaining claims alleged in Silva's first and second causes of action. In this motion, See's Candy argued the *class-certified* claims failed as a matter of law because the undisputed evidence demonstrated Silva could not prove the class lost compensation as a result of See's Candy's application of the rounding or grace-period policies.

In support, See's Candy produced evidence describing its timekeeping policies. According to this evidence, See's Candy uses a timekeeping software system, known as Kronos, to record its employee work hours. Employees are required to "punch" into the system at the beginning and end of their shifts, as well as for lunch breaks. A Kronos punch shows the actual time (to the minute) when the employee clocked into the system. During the relevant times, See's Candy calculated an employee's pay based on the Kronos punch times, subject to adjustment under two policies: (1) a rounding policy; and (2) the grace-period policy.

Under the rounding policy, in and out punches are rounded (up or down) to the nearest tenth of an hour (every six minutes beginning with the hour mark). The time punches are thus rounded to the nearest three-minute mark. For example, if an employee clocks in at 7:58 a.m., the system rounds up the time to 8:00 a.m. If the employee clocks in at 8:02 a.m., the system rounds down the entry to 8:00 a.m. Both times are indicated on the punch card.

8

Under the separate grace-period policy, employees *whose schedules have been programmed into the Kronos system* may voluntarily punch into the system up to 10 minutes before their scheduled start time and 10 minutes after their scheduled end time. This grace period is voluntary, and is offered to employees to provide flexibility in the manner and times that workers clock in and out of the shifts. See's Candy's rules prohibit employees from working during the grace period. If an employee is asked to work during this time, the manager is required to make a timekeeping adjustment to ensure the employee is paid for that work. Managers at See's Candy shops closely monitor employee start and stop times to ensure they are not working outside their scheduled work times.

Because See's Candy assumes the employees are not working during the 10-minute grace period, if an employee punches into the system during this time, the employee is paid based on his or her scheduled start/stop time, rather than the punch time. In other words, the grace-period time-punches accurately show when the employee punched in or out, but they do not show the beginning or end of the employee's work time, i.e., compensable time. Generally, if the grace-period rule is applied, the rounding policy becomes irrelevant because the start and/or stop time will be exactly the employee's scheduled time and there will be no need to round down or up to the nearest tenth of an hour.

See's Candy also presented two declarations of Dr. Ali Saad, a labor economist and statistician, who examined thousands of See's Candy time records. Dr. Saad said that each time punch record contained two entries: (1) the actual time the employee clocked

9

in or out; and (2) the actual punch time to the nearest tenth of an hour, either up or down.

Using these records, Dr. Saad calculated each employee's shift twice, first using the actual unrounded time stamps, and second using the rounded time stamps. Dr. Saad then computed the differences in duration between the shifts. Based on these calculations, Dr. Saad concluded in two separate studies (one in 2010 and one in 2011) that See's Candy's rounding rule is "unbiased."

In his 2010 study, Dr. Saad examined See's Candy employee time punch records from October 2005 to March 2010. Dr. Saad found See's Candy's rounding policy resulted in a total gain of 2,230 hours for the class members as a whole. For plaintiff Silva, Dr. Saad found an "aggregate shortfall" of .47 hours or 28 minutes, which he said "equates to a shortfall in the average rounded relative to actual shift of 2 seconds." Based on these calculations and a statistical analysis, Dr. Saad opined that the rounding policy "is exactly neutral" and unbiased.

In the 2011 study, Dr. Saad expanded the coverage period to April 2011 and also included hourly employees who worked in See's Candy's administrative office locations. This increased the number of employees analyzed from 7,500 to 9,000, and the number of shifts from approximately 900,000 to more than 1.2 million. Dr. Saad also specifically considered California law providing a worker had the right to overtime pay after working an eight-hour day.

Based on this study, Dr. Saad reaffirmed that See's Candy's rounding rule is "both mathematically and empirically unbiased." Specifically, he concluded: (1) the aggregate impact of rounding actual time punches produced a net surplus of 2,749 employee work

10

hours in time paid and thus resulted in a net economic benefit to the employees as a group; (2) 67 percent of the employees had either no impact or a net gain under the rounding policy; (3) the rounding policy did not negatively impact employee overtime compensation: it was "virtually a wash—neither the employees nor See's benefited from this rounding practice"; and (4) there was no meaningful impact on Silva's hours paid under the rounding practice; she obtained an aggregate surplus of 1.85 hours.

In reaching these conclusions, Dr. Saad said he had assumed employees did not work during the grace period; whether this assumption was correct could not be observed from the data; and he was not asked to address this factual issue. Dr. Saad indicated he did not round during the 10 minutes before or after an employee's scheduled time period if the employee's scheduled work times had been programmed into the Kronos system because under the grace-period policy, the employee would be paid from the scheduled time, not from a rounded time.

See's Candy also presented evidence that it periodically reminded employees they were prohibited from working if they clocked in during the grace period, and employees were told that if they worked during this time they must notify the manager who would manually add time to the employee's Kronos records. See's Candy submitted declarations from numerous employees who stated they did not work during the grace period; understood that if they did work they would be compensated for the time; understood that the decision to use the policy is "always voluntary"; and described the types of personal activities performed during this period, including using the restroom "to do my makeup

11

or hair," going to the post office to drop off personal mail, "go[ing] across the street to the [drugstore]," and "play[ing] games on my cell phone."

*Silva's Summary Judgment Opposition*

In opposition, Silva argued the summary judgment motion must be denied because See's Candy made no attempt to meet its burden to show her nonclass claims (nonrounding/nongrace-period claims) alleged in her first two causes of action have no merit. She noted that in her amended complaint she alleged that she did not receive statutorily-required rest and meal periods in violation of sections 226.7 and 512, and that See's Candy "failed to reimburse her for expenses she incurred through the performance of her job duties, in violation of . . . section 2802." Silva also presented her declaration to support the viability of these individual (nonclass/nonrounding/nongrace-period) claims. In relevant part, Silva's declaration stated:

> "While I was working at SEE'S, there were times when our store was very busy. This was especially true during the Holiday Season, which normally lasted from October through January, each year. During these peak times, it was extremely rare that I would be provided a rest break."

> "I also know that I never received a rest period payment on the occasions where I was not provided a rest break. In fact, I am unaware of anyone at SEE'S who ever received a rest period payment. [¶] . . . Throughout my employment, but especially during the Holiday season, there were occasions when it was just not possible for me to get to take a full 30 minute meal break, because we were too busy in the store."

> "During these interrupted lunch breaks, my time records would show I was punched out for lunch. However, I would be asked by SEE'S to perform work or assist a customer during my lunch break. I would do so when asked, even though I did not punch back in to be

12

paid for that time. [¶] . . . I do not believe I was ever given a meal period payment for these interrupted lunches."

"Additionally, while working for SEE'S, I was often required to use my personal car to drive to the bank for See's business. While I did receive some reimbursement from SEE'S, I do not believe it was enough to cover all of my expenses. I also received, and had to make, calls for SEE'S on my personal cell phone, for which I never received reimbursement."

Silva also contended that the summary judgment motion on her class claims (challenging the rounding/grace-period policies) was without merit because the *See's Candy* court had already ruled triable factual issues exist on these issues. She alternatively argued that See's Candy did not meet its summary judgment burden because Dr. Saad had made numerous unsupported assumptions and his conclusions were contrary to applicable law. Silva also submitted the declaration of her own expert, Robert Fountain, a statistics professor, to show the existence of triable issues of fact on her rounding/grace-period claims. In his declaration, Fountain opined that See's Candy's timekeeping "system is inherently not fair or neutral in its application to the employees," and that numerous employees "lost very large amounts of compensation . . . ."[2]

To show triable issues of fact on her challenge to See's Candy's grace-period policy, Silva mainly argued that the employees were under See's Candy's control while clocked into the Kronos system. Silva relied on her expert's declaration (who assumed that employees were working during the grace period) and excerpts from her deposition

---

[2]     We do not further detail Fountain's opinions because (as explained below) the court sustained See's Candy's objections to the entire declaration, and Silva has not challenged this evidentiary ruling on appeal.

13

testimony, in which she said that she occasionally saw employees clocking in 10 minutes before their shifts and they would then "either . . . do hand exercises or . . . do things or whatever, you know. They would just come in and start their shift and work." Silva acknowledged, however, that she did not know if these other employees' schedules were programmed into the Kronos system and did not know if they were paid for the time they worked before their scheduled shifts.

*See's Candy's Reply*

In its reply memorandum on the issue of Silva's individual claims, See's Candy argued that Silva's first two causes of action encompass only class allegations (challenging See's Candy's rounding and grace-period policies), and that these causes of action did not include *any individual claims.* See's Candy also presented a copy of a July 2010 settlement and release agreement (Settlement Agreement) between See's Candy and Silva, in which Silva agreed to release discrimination claims she previously filed with the Equal Opportunity Commission in exchange for a monetary payment from See's Candy. See's Candy argued that in this Settlement Agreement, Silva had agreed not to pursue any individual claims in her existing superior court action and to assert only her class claims. See's Candy alternatively argued that if the court concluded that Silva had remaining viable individual (nonrounding/nongrace-period) claims, the court should permit See's Candy to file and serve an amended notice requesting summary adjudication on the class claims as an alternative to a summary judgment.

14

See's Candy also asserted numerous objections to Fountain's declaration, including that Fountain's opinions lack factual foundation and were based on assumptions contrary to the law established in *See's Candy*.

*Silva's Response to New Material Submitted in See's Candy's Reply*

Silva objected to See's Candy presenting new evidence (the Settlement Agreement), and argued that the Settlement Agreement was irrelevant because it applied only to her discrimination claims and not to her wage and hour claims alleged in the first amended complaint. Silva also objected to See's Candy's counsel's proposed amended notice to add a summary adjudication motion as an alternative to her summary judgment motion.

*Court's Ruling Granting Summary Judgment*

After considering the parties' submissions and conducting a hearing, the court granted See's Candy's motion in its entirety. With respect to the class claims, the court first sustained See's Candy's evidentiary objections to the declaration of Silva's expert, Fountain. The court then found that See's Candy met its "initial burden on summary judgment of demonstrating that the time rounding policy was facially neutral," and Silva did not meet her burden to create a triable issue of fact on this issue. The court similarly found See's Candy met its burden to show its grace-period policy did not result in undercompensation, and Silva did not meet her burden to show a triable factual issue on the lawfulness of this policy.

The court also agreed with See's Candy that Silva had not alleged individual claims in her first two causes of action. The court noted that although the complaint's

15

caption stated the claims were being brought in Silva's individual capacity, the body of the complaint focused on her class allegations. The court also found Silva had released any individual claims by entering into the Settlement Agreement.

In moving for reconsideration, Silva objected to the court's conclusion that she had not alleged individual claims in her amended complaint. Silva pointed out that her amended complaint contained numerous references to the fact that she was bringing claims in her individual capacity (particularly the alleged meal and rest break violations and the failure to reimburse for business expenses). Silva also submitted her counsel's declaration and her own declaration explaining the settlement of the discrimination claims, and that the parties did not intend that it would apply to the individual wage and hour claims asserted in the complaint. She noted that the Settlement Agreement contained an express exclusion for the "claims" alleged in Silva's class action *complaint*. The court denied the motion.

## DISCUSSION

### I. *Review Standards*

A defendant moving for summary judgment or summary adjudication "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) To meet this burden, the defendant must show one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (*Ibid*.) This burden can be met by relying on the opposing party's factually inadequate discovery responses if these responses show the plaintiff "will be

16

unable to prove its case by any means." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1439; see *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 78-81.)  A defendant seeking to prevail on this ground must make an affirmative showing that the plaintiff does not possess, and cannot reasonably obtain, evidence to prove his or her case.  (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587; see *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).)

If the defendant does not present sufficient evidence to meet its initial burden, the court must deny the motion.  (*Aguilar, supra*, 25 Cal.4th at p. 850.)  But if the defendant satisfies its burden, " 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' "  (*Id.* at p. 849.)  The plaintiff must present admissible evidence to establish a triable issue of fact.  (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145.)  An "issue of fact . . . is not created by 'speculation, conjecture, imagination or guess work.' "  (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190, 196.)

We review de novo a summary judgment or summary adjudication.  (*Saelzler, supra*, 25 Cal.4th at p. 767.)  We must affirm the court's ruling if it is correct on any ground asserted in the trial court, regardless of the trial court's stated reason.  (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.)  In evaluating the record, we strictly scrutinize the moving party's papers and resolve all doubts in the opposing party's favor.  (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500; *Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562.)  Because a summary judgment and a summary adjudication are drastic procedures that deny the adversary party a trial,

17

these motions "should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305.)

## II. *Summary and Overview of Conclusions*

Silva's first amended complaint identifies three causes of action: (1) violations of various Labor Code sections; (2) violation of the UCL; and (3) entitlement to PAGA penalties for the violations described in the first cause of action. The court certified a class only on one of Silva's claims within her first two causes of action: Silva's allegation that See's Candy's timekeeping policies (rounding and grace-period policies) resulted in undercompensating its employees for all work performed.

After the *See's Candy* remand, the trial court first heard See's Candy's summary adjudication motion on the PAGA cause of action, and the court granted the motion, finding: (1) Silva could not prevail on the PAGA cause of action based on her challenge to the rounding/grace-period policies because Silva did not provide adequate statutory notice of this claim to the LWDA; and (2) Silva could not prevail on the PAGA cause of action based on the remaining alleged Labor Code violations because she had abandoned these claims.

The court then granted See's Candy's summary judgment motion on the remaining causes of action based on the court's conclusion that (1) the undisputed facts show Silva could not recover on her class claims because the timekeeping policies were proper under California law and did not result in undercompensation; and (2) Silva had not alleged individual claims in her first two causes of action, and/or had settled and dismissed those claims.

18

On appeal, Silva challenges both summary judgment and summary adjudication.

As to the summary judgment, we conclude See's Candy met its burden to show it was entitled to judgment as a matter of law on the class-certified claims (failure to properly pay wages based on See's Candy's rounding and grace-period policies), and Silva did not meet her burden to show a triable issue of fact on these claims. The court thus properly granted summary judgment on Silva's claims challenging See's Candy's timekeeping policies. We conclude, however, the court erred in granting summary judgment on Silva's individual claims alleged in her first and second causes of action because See's Candy did not move for summary judgment on these claims.

This latter conclusion does not mean the summary judgment must be reversed in its entirety. Although See's Candy did not bring a summary adjudication motion as an alternative to its summary judgment motion on the first two causes of action, it did request leave to amend its summary judgment notice to add the alternate summary adjudication request. This proposed amendment should have been granted. There is no showing Silva would have been prejudiced by permitting the amendment. Additionally, as explained below, allowing the amendment promotes judicial efficiency and fairness.

Accordingly, we uphold the summary judgment on the causes of action challenging See's Candy's rounding/grace-period policies, and reverse on the causes of action asserting the individual meal/rest-period and business expense statutory violations.

As to the PAGA (third) cause of action, we affirm the court's dismissal of this cause of action in its entirety in the summary adjudication proceeding. On the portion of the PAGA cause of action challenging the rounding and grace-period policies, we do not

19

reach the LWDA notice issue because the court's conclusion was correct on another ground. A PAGA claim is viable only if the underlying Labor Code violations have merit. Based on our finding that the undisputed facts show Silva cannot prevail on her rounding/grace-period challenges, it necessarily follows that Silva cannot prevail on her PAGA cause of action based on these same theories, even if she gave proper notice.

As to the challenged summary adjudication on the portion of the PAGA cause of action based on the other Labor Code violations, we determine the court properly granted the summary adjudication because See's Candy met its burden to show factually deficient discovery responses, and Silva failed to meet her burden to show a triable factual issue.

### III. *Summary Judgment*

### A. *Summary Judgment on Class Claims Challenging Rounding/Grace-Period Policies*

### 1. *Rounding Policy*

In *See's Candy*, this court held "the rule in California is that an employer is entitled to use the nearest-tenth rounding policy if the rounding policy is fair and neutral on its face and 'it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' " (*See's Candy, supra*, 210 Cal.App.4th at p. 907.) We reasoned that time-rounding is a practical method for calculating work time and can be used to ensure all workers are fully compensated for their work for a relevant time period. (*Id.* at p. 903.) We stated: "Assuming a rounding-over-time policy is neutral, both facially and as applied, the practice is proper under California law because its net effect is to permit employers to efficiently calculate hours worked without imposing any burden on employees." (*Ibid.*)

20

Under this standard, courts have upheld an employer's rounding policy if " 'on average, [it] favors neither overpayment nor underpayment,' " but have rejected timekeeping policies that " 'systematically undercompensate employees' " such as where the employer's rounding policy " 'encompasses only rounding down.' " (*Id.* at pp. 901-902; see *Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership* (9th Cir. 2016) 821 F.3d 1069, 1075-1078 [agreeing with *See's Candy'*s reasoning as applied to federal rounding rule].)

Applying these principles, in *See's Candy* we determined the trial court erred in granting Silva's summary adjudication motion on See's Candy's rounding defense. (*See's Candy, supra*, 210 Cal.App.4th at p. 892.) Because she was the moving party below, Silva had the initial burden to show See's Candy's rounding policy was unlawful. (*Id.* at p. 900.) In considering whether she met this burden, we discussed Silva's expert's opinion that the rounding policy resulted in employees not being fairly compensated, but found this evidence did not satisfy the burden because the expert's opinion was based on an unsupported assumption that employees worked during the grace periods. (*Id.* at pp. 907-908.) We also held that "even if [Silva's expert's] report satisfied [her] burden," See's Candy presented evidence (primarily Dr. Saad's declarations) creating "a triable issue of fact" on this issue. (*Id.* at p. 908.) We thus granted See's Candy's writ petition and ordered the court to reinstate See's Candy's defense that its rounding practices were lawful. (*Id.* at pp. 892, 913-914.)

After remand and after successfully obtaining dismissal of the PAGA cause of action, See's Candy moved for summary judgment on the rounding issue based on the

21

same expert declarations of Dr. Saad. As detailed in the factual section above, Dr. Saad concluded—based on two statistical studies—that during the class period See's Candy employees were paid for all of their work under See's Candy's rounding policy and that See's Candy's rounding policy was mathematically neutral over time. Dr. Saad also opined that Silva was fully compensated for her work: the 2010 study showed she had a shortfall of 28 minutes over the term of her employment, which equated to an average relative time of two seconds per shift (statistically meaningless over the time period studied) and the 2011 study showed that she was compensated for an aggregate surplus of 1.85 hours.

This evidence met See's Candy's summary judgment burden on Silva's claim challenging See's Candy's rounding practice. In opposing the summary judgment motion, Silva presented the declaration of statistics professor Robert Fountain, who opined that the system "does not appear to be fair or neutral . . . as there is a net loss of regular time worked and a net loss of overtime worked." See's Candy objected to the opinions and conclusions in Fountain's declaration on numerous grounds, including that Fountain's opinions were contrary to applicable legal standards, were without evidentiary foundation, and improperly failed to distinguish between the rounding policy and the grace-period policy. The court sustained each of these objections.

On appeal, Silva cites to her expert declaration to show a triable issue of fact, but does not challenge the court's evidentiary ruling. In her opening brief, she asserts only that "it was error for the Court to ignore" her "evidence that See's employees were grossly undercompensated." But she does not further discuss this point; cite to her expert's

22

declaration; challenge the court's evidentiary ruling; or provide any supporting legal authority. In her reply brief, Silva summarily states (without a legal or factual citation) that "It was an abuse of discretion for the Court to sustain See's objections and completely ignore Dr. Fountain's testimony, while simultaneously allowing Dr. Saad's conclusions into evidence." She does not identify any legal basis for this assertion. A conclusory statement is insufficient to challenge a court's evidentiary ruling. An undeveloped argument unsupported by any citation to any legal or factual authority is forfeited. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].) Accordingly, we are bound by the court's evidentiary ruling and disregard Fountain's declaration for purposes of our appellate analysis. (*Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41, fn. 1.)

Silva also contends See's Candy never met its own summary judgment burden because Dr. Saad improperly presumed employees did not work during the grace periods. However, as explained below, the assumption was supported because See's Candy presented evidence showing it had a strict policy against working during the grace period; employees followed this policy; and if employees worked during the grace period, they would be compensated for their time. Silva did not present any contrary evidence raising a triable issue of fact on this issue.

In a related argument, Silva argues See's Candy's rounding policy is inherently unfair because its grace-period policies mean that an employee's time will always round

23

forward to the employee's scheduled start time and round backward to the employee's scheduled end time. This argument reflects a misunderstanding of See's Candy's grace-period policy. The policy is not a rounding policy in the sense that it recalculates an employee's work time to the nearest three-minute mark. Instead, the grace-period policy is a method that seeks to accurately count each employee's actual work time. If the employee is not working during the grace period, the calculation of the employee time from the employee's scheduled start time or end time is accurate.

Silva also contends See's Candy did not meet its summary judgment burden because See's Candy's rounding policy "fails to account for the difference in monetary value between regular minutes and overtime minutes." However, Dr. Saad specifically opined that See's Candy's "rounding policy did not negatively impact employees' overtime compensation." After considering the rounding policy in light of California's eight-hour-daily overtime rules, Dr. Saad opined that it was "virtually a wash" with respect to overtime pay, and "neither the employees nor See's [Candy] benefited from this rounding practice." Dr. Saad's expert opinion was sufficient to meet See's Candy's burden, and Silva did not present any contrary admissible evidence on this issue.

Silva also argues that See's Candy has "several attendance ('tardy') policies which disciplined employees for clocking in late . . . [and] [t]hese policies create a multitude of slightly early clock-ins which always round in favor of See's." Silva's cited evidence does not support this claim. If the rounding policy is neutral and the tardiness policy is based solely on the actual punch time, there is no basis for finding that See's Candy unfairly benefits from the rounding policy because of its tardiness policies.

24

Silva also contends the trial court erred in granting summary judgment because *See's Candy* held the legality of the rounding policy must be decided by a jury. (*See's Candy, supra*, 210 Cal.App.4th 889.) Silva misreads our prior decision. Because See's Candy had not moved for summary adjudication or summary judgment in the prior proceeding, we had no occasion to determine whether See's Candy's evidence satisfied its burden to show it was entitled to judgment as a matter of law on the rounding and grace-period policy issues. (*Id.* at p. 892.) The issue presented here was not decided in Silva's favor in *See's Candy*.

Silva also devotes lengthy portions of her appellate briefs to her argument that the trial court erred in granting See's Candy's summary judgment motion because the court improperly imposed the initial burden of proof on her. We disagree with Silva's reading of the trial court's order. Although the order contained some ambiguity on the burden issue, the court clearly stated that See's Candy had the "initial burden on summary judgment [to] demonstrat[e] that the time rounding policy was facially neutral . . . ." More important, even if the trial court misapplied the summary judgment burden rules, on our de novo review we evaluate the court's final determination, and not its rationale. (*Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1402.) We have conducted an independent analysis of the parties' contentions, and on our application of the proper summary judgment burden rules, we have concluded that See's Candy met its burden to show the rounding policy is fair and neutral on its face and is used in a manner that over a relevant time period will compensate the employees for all the time they have actually worked. Because Silva produced no admissible evidence to rebut this

25

conclusion, the trial court properly found Silva's claims based on the rounding policy were without merit.

## 2. *Grace-Period Policy*

Under See's Candy's grace-period policy, employees whose schedules have been programmed into the Kronos system may voluntarily punch the time clock up to 10 minutes before their scheduled start times and 10 minutes after their scheduled end times. Because employees are required to comply with company policy that prohibits them from working during the 10-minute grace period, if an employee punches into the system during the grace period, the employee is paid based on his or her scheduled start/stop time, rather than the punch time.

Silva does not challenge the legality of this policy *if* during the grace period the employee was not working and/or was not under the employer's control. But she argues the court erred in granting summary judgment because the evidence showed employees were under the control of See's Candy during the grace period, and were not compensated for this time. In this regard, Silva asserts that an employer must prove the accuracy of its time records, particularly when there is any discrepancy between the clocked-in time and the paid time. We agree with this principle but find that See's Candy met its summary judgment burden on these issues, and Silva did not come forward with evidence showing a triable factual issue.

Generally, employees must be paid for the time they are working *or* are "subject to the control of" an employer. (See *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 582 (*Morillion*).) In defining "control," *Morillion* held employees are subject to the

26

control of their employers when they are prevented from using " 'the time effectively for [their] own purposes.' " (*Id.* at p. 586.) In *Morillion*, the high court found agricultural employees were subject to their employer's control when they were "*required*" to ride on an employer's bus to travel to and from the fields. (*Id.* at p. 579, italics added.) The court reasoned that during the bus ride plaintiffs could not engage in personal errands of their choice and were prohibited from "effectively using their travel time for their own purposes." (*Id.* at p. 586.) The court also rejected the employer's argument that the workers were not under its control because they could read or sleep while on the bus, noting that employees "*while working* in an office setting" do not lose their entitlement to be paid merely because they "listen[ ] to music and drink[ ] coffee." (*Ibid.*, italics added.)

In this case, See's Candy presented evidence that it had a policy of prohibiting employees from working during the grace period and submitted numerous employee declarations supporting that See's Candy exercised no control over the employees during the grace period. This evidence showed that See's Candy employees were permitted to voluntarily clock in early or clock out late, and during this time they could (and did) engage exclusively in personal activities, including leaving the premises to run quick errands, drinking coffee, applying makeup, and making personal calls. See's Candy also presented evidence that if any worker did perform work during the grace period he or she would be paid for that time.

This evidence established See's Candy employees were in a different position from the *Morillion* agricultural workers, who were required to be confined to a bus to be transported to their next workplace. Further, contrary to Silva's argument, the factual

27

record does not requires us to "assume" or "presume" that the employees did not work during the grace period. See's Candy presented admissible, credible evidence that its employees engaged only in personal activities during the grace period and were neither working nor under See's Candy's control during this time. Silva did not present any contrary evidence.

Silva's reliance on *Safeway v. Superior Court* (2015) 238 Cal.App.4th 1138 is unhelpful. In *Safeway,* the Court of Appeal upheld a trial court's order certifying a class alleging an employer failed to provide required meal and rest breaks. (*Id.* at p. 1145.) In concluding the employees sufficiently demonstrated an employer policy to pressure employees not to take meal breaks, the court quoted a concurring opinion in *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, stating that if employer "records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided." (*Id.* at p. 1053.)

This case is in a different procedural context: we are reviewing a summary judgment and not a class certification. But even if there exists a presumption here that all See's Candy employees were working during the grace period, See's Candy proffered admissible evidence rebutting the presumption and showing that the employees did not in fact work during the grace period.

At that point in the summary judgment proceeding, it was Silva's burden to submit evidence negating this fact. As her only attempt to do so, Silva relied on excerpts from her own deposition in which she testified that she sometimes saw employees clocking in

28

before their shifts and they would then "either . . . do hand exercises or . . . do things or whatever, you know.  They would just come in and start their shift and work."  Silva acknowledged, however, that she did not know if these employees' schedules were programmed into the Kronos system (a predicate to the application of the grace-period rule) and did not know if these employees were paid for the time they worked before their shifts.  Without this information, there is no reasoned basis for concluding that employees were not fully paid for their time under the grace-period policy.  Likewise, Silva's argument that employees were not permitted to leave the premises during the grace period was unsupported by the factual record.  Silva relied on deposition testimony that pertained to clocking in and out, and did not refer to grace-period personal discretionary activities.

## B.  *Summary Judgment on Silva's Individual Claims*

Silva next contends the court erred in adjudicating her individual claims even though See's Candy did not move for summary judgment on these claims.

See's Candy acknowledges it did not move for summary judgment or summary adjudication on any individual claims asserted by Silva in the first and second causes of action.  After Silva raised the issue in her summary judgment opposition papers, See's Candy asserted several responsive arguments:  (1) Silva never alleged individual (nonclass claims) in her first and second causes of action; (2) Silva released any such claims in the July 2010 Settlement Agreement; and (3) if the court finds these individual claims remained, the court should provide See's Candy with leave to amend its summary judgment notice to add an alternative motion for summary adjudication (on the class

claims).  The court agreed with the first two arguments and thus found that summary judgment was not precluded.

We agree with Silva that the court erred in this ruling.  On our independent review of Silva's first amended complaint, we find Silva did sufficiently allege individual claims in the first two causes of action.  Silva alleged she was suing in her individual capacity as well as on behalf of a class, and alleged that See's Candy "failed to possess a compliant meal or rest period policy"; that she did not receive statutorily-required rest and meal periods in violation of sections 226.7 and 512; and that See's Candy "failed to reimburse her for expenses she incurred through the performance of her job duties, in violation of Labor Code section 2802. . . ."  In her UCL cause of action, Silva repeated that she was bringing the action on her own behalf (as well as on behalf of a class) and alleged she suffered an injury in fact under Business and Professions Code section 17204.

Under the required liberal review standards applicable to pleadings challenged on a summary judgment motion (*Taylor v. Lockheed Martin Corp.* (2000) 78 Cal.App.4th 472, 479; *Nelson v. Superior Court* (2006) 144 Cal.App.4th 689, 692), we find Silva pled sufficient facts to allege entitlement to recover on individual claims.  Silva also presented her own declaration to support her factual claims that she was denied required meal/rest breaks and was not reimbursed for business expenses to support the allegations in her first and second causes of action.  Silva stated in her declaration that it was "extremely rare" that she was provided a rest break during the holiday season; it was usually "not possible" for her to take a full meal break; she was frequently asked to work while she

30

was clocked out for her lunch break; and she did not receive reimbursement for required business expenses.

We reject See's Candy alternate argument that Silva is barred from recovering on the individual claims because Silva released these claims in the Settlement Agreement. We note initially that by first presenting the Settlement Agreement in its reply, See's Candy did not provide Silva fair opportunity to counter this evidence. Where a remedy as drastic as summary judgment is involved, due process requires a party be fully advised of the issues to be addressed and be given adequate notice of what facts it must rebut in order to prevail. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 316.) Additionally, on our independent review of the Settlement Agreement, the agreement does not support See's Candy's argument that Silva released her individual wage and hour claims. In the agreement, Silva agreed to "immediately withdraw with prejudice *her discrimination complaints* filed with the Department of Fair Employment & Housing . . . and the Equal Employment Opportunity Commission," and agreed she would not assert any claim "arising from or attributable to any alleged unlawful practice of See's" *with the exception of* the claims alleged in the existing action, referred to as the "Class Action." (Italics added.) Specifically, the Settlement Agreement states: "Class Action Exception: This Settlement and the release do not apply to the *claims* set forth in Plaintiff's Class Action against See's: *Pamela Silva, etc. v. See's Candy Shops, Inc. etc., et al.*, San Diego County Superior Court Case No. 37-2009-00100692-CU-OE-CTL." (First italics added.)

31

Viewing the plain language of this exception in the context of the entire Settlement Agreement, Silva agreed to release all past and future claims, except for "*the claims*" alleged in her existing action (at that time, the first amended complaint), *which included her individual claims*. (Italics added.) Read in context, the reference to the "Class Action" was a descriptive term to refer to the existing action, and not one of limitation. There is nothing in the Settlement Agreement supporting a reasonable conclusion that the "Class Action" language was intended to limit the exception to only the *class action allegations* in the complaint. This interpretation is consistent with See's Candy's subsequent actions in which See's Candy (after the Settlement Agreement was executed) assumed Silva had continued rights to pursue her PAGA claims despite they were not encompassed within the certified class claims.

We conclude See's Candy did not meet its summary judgment burden on Silva's individual claims alleged in her first and second causes of action. We thus reverse the judgment with respect to these claims.

Silva contends this conclusion requires that we also reverse the summary judgment on the class (rounding/grace-period) challenges because See's Candy did not move for summary adjudication on these causes of action as an alternative to summary judgment. We disagree. See's Candy specifically requested the trial court to allow it to amend its summary judgment notice to include a summary adjudication motion in the alternative, and filed a proposed amended notice. The court should have granted this request. There was no prejudice to Silva because she had a full and fair opportunity to address the arguments on the rounding/grace-period claims. The record before us

32

consists of more than 1,300 pages and the parties have submitted voluminous appellate briefs on the rounding/grace-period issues. We have thoroughly reviewed the record and arguments on the rounding/grace-period claims, and have concluded Silva's claims have no factual basis. It would be nonsensical to reverse the court's ruling on the rounding/grace-period claims and require the parties to go to trial on those issues merely because there may exist potential triable issues of fact on Silva's *non*rounding/*non*grace-period/*non*PAGA claims. See's Candy specifically requested the court for leave to amend its notice to include a summary adjudication. This motion should have been granted.

In reaching this conclusion, we are aware that the rounding/grace-period claims and the individual claims were both asserted in the first and second causes of action, and that generally a summary adjudication motion "shall be granted only if it completely disposes of a *cause of action*, an affirmative defense, a claim for damages, or an issue of duty." (Code Civ. Proc., § 437c, subd. (f)(1), italics added.) However, a cause of action for purposes of a summary adjudication motion "means ' "a group of related paragraphs in the complaint reflecting a *separate theory* of liability." ' " (*Catalano v. Superior Court* (2000) 82 Cal.App.4th 91, 96; see *Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1117-1118; *Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854-1855.) In this case, Silva's individual claims alleging that she did not receive required meal and rest breaks/payments and or was not reimbursed for business expenses were separate theories from her claim that See's Candy employees did not receive full compensation based on the application of the rounding and grace-period policies. Accordingly, on the record before us, it is proper to affirm a grant of summary

33

adjudication on the latter claim, while concluding summary adjudication should be denied on the former (Silva's individual) claims asserted in the first two causes of action.

### III. *Summary Adjudication on PAGA Cause of Action*

In her PAGA cause of action (§ 2698 et seq.), Silva sought entitlement to statutory penalties based on her theories that: (1) See's Candy's rounding and grace-period policies are illegal under California law because employees are not fully compensated for their work; and (2) See's Candy committed other alleged Labor Code violations, including failing to provide statutorily-required meal periods and reimbursement for necessary business expenditures. For the reasons explained below, we conclude the court properly granted summary adjudication on the PAGA cause of action based on each of these theories.

### A. *PAGA Claim Challenging Rounding and Grace-Period Policy*

See's Candy moved for summary adjudication on Silva's PAGA cause of action challenging See's Candy's rounding and grace-period policies based on several grounds, including: (1) Silva's notice to the LWDA was insufficient to notify the agency of the rounding/grace-period challenge (see § 2699.3, subd. (a)(1)); (2) Silva's position conflicted with the Labor Commissioner's enforcement policies; (3) See's Candy's rounding and grace-period policies are not covered by PAGA; and (4) PAGA is unconstitutional.

The court granted the motion primarily on grounds of insufficiency of the LWDA notice, and rejected See's Candy's remaining arguments. On appeal, Silva contends the court erred in determining her LDWA notice was insufficient. See's Candy counters that

34

the court's ruling was supported by the applicable law (citing primarily federal district court decisions), and/or the trial court's ruling can be upheld on any of the other grounds asserted in its motion. See's Candy alternatively argues that we need not reach the issue because the court's ruling did not prejudice Silva's rights.

We agree with the latter argument and thus do not reach the LWDA notice issue or the other PAGA procedural/constitutional issues raised by See's Candy. Even assuming the court erred in granting summary adjudication on the PAGA claim regarding the claimed deficient notice on the rounding and grace-period challenges, the PAGA claims would have been properly dismissed as part of the summary judgment motion that was filed shortly after the PAGA matter was adjudicated.

In ruling on See's Candy's summary judgment motion less than three months after granting summary adjudication on Silva's PAGA claims, the trial court dismissed the rounding/grace-period claims alleged in Silva's first and second causes of action because See's Candy met its burden to show these claims were without merit and Silva failed to raise a triable issue regarding the legality of the rounding/grace-period policies. We have affirmed that ruling. The first portion of Silva's PAGA claim was based on the same substantive allegations (challenging the lawfulness of the rounding/grace-period policies) adjudicated in the summary judgment motion. Thus, this portion of the PAGA claim necessarily fails. (*Rope v. Auto-Chlor System of Washington, Inc.* (2013) 220 Cal.App.4th 635, 650 [recovery of civil penalties under PAGA " 'requires proof of a Labor Code violation' "]; accord *Arias v. Superior Court* (2009) 46 Cal.4th 969, 987.) Because the record shows that See's Candy was entitled to judgment as a matter of law on

Silva's claim that See's Candy's timekeeping policies violated the Labor Code, it necessarily follows that Silva could not have recovered on her PAGA claim on this same theory, regardless of the adequacy of the initial PAGA notice. Under the California constitution, a judgment is reversible only if prejudicial error is established. (See *Smith v. Smith* (2012) 208 Cal.App.4th 1074, 1078.)

B. *Summary Adjudication on Claims Other Than Rounding/Grace Period*

In the second portion of her PAGA cause of action, Silva alleged several challenges other than the rounding/grace-period challenges. Specifically, Silva alleged that See's Candy failed to provide employees with required meal and rest periods (§§ 226.7, 512) and failed to reimburse employees for all necessary expenditures (§ 2802).

In moving for summary adjudication on this cause of action pertaining to *these* claims, See's Candy argued that Silva had stated in a discovery response that the only ground for her PAGA claim "is rounding and grace periods." In support, See's Candy proffered Silva's response to a special interrogatory. That interrogatory asked: "STATE WITH PARTICULARITY the factual basis" *for your PAGA claim* "as alleged in YOUR Third Cause of Action . . . ." In response, Silva stated: "[See's Candy's] practice of providing 'Grace Periods' causes employees to provide work without being fully compensated in violation of the Labor Code. See's 'Rounding' Policy also fails to compensated employees for all regular and overtime hours worked." Silva then provided a detailed factual explanation of these claims, but never identified any facts pertaining to

36

her meal/rest-period and reimbursement claims. Silva verified this response in January 2010.

This evidence met See's Candy's summary adjudication burden. A party may meet its burden by showing the opposing party provided factually devoid responses in answering a written interrogatory requesting all facts to support a claim. (See *Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, 1228-1231; *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 102-107 (*Andrews*); *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 578.) A plaintiff's response to a comprehensive interrogatory question must fully disclose the information known at the time of the discovery request. (*Andrews, supra*, 138 Cal.App.4th at p. 106.)

In answering a direct request that she "state with particularity" the facts supporting her PAGA claim, Silva discussed only facts pertaining to the rounding/grace-period challenges. (Capitalization omitted.) From this response, it is reasonable to presume that Silva was unaware of any other facts or theories supporting her PAGA claim. Silva argues this inference is unreasonable because she expressly reserved the right to supplement her responses, and See's Candy delayed some of its own discovery responses. Although Silva had the right to add information to her interrogatory responses, the critical point is that she never did so. See's Candy asked for information that was within Silva's knowledge and control, and Silva's omission of facts to support her nonrounding/nongrace-period claims was sufficient to meet See's Candy's burden to show these factual theories underlying Silva's PAGA claim were nonexistent or had been abandoned.

37

Because See's Candy met its summary adjudication burden, the burden of production shifted to Silva to establish with admissible evidence the existence of a triable issue of fact as to her PAGA claim on the nonrounding/nongrace-period theories. (See *Andrews, supra*, 138 Cal.App.4th at p. 107.) On our independent review of the record, we conclude Silva did not do so.

In attempting to meet this burden, Silva relied on her counsel's declaration and 2010 correspondence between her counsel and See's Candy's counsel in which her counsel indicated that the grace-period and rounding claims were not the only claims being asserted in the complaint. This evidence did not meet Silva's burden to show a triable issue of fact. The fact that defense counsel was on notice in 2010 that Silva's counsel was *intending* to assert theories in addition to rounding/grace-period claims as support for Silva's PAGA claim, does not mean that Silva had any facts to support these claims four years later in 2014 when she opposed the summary adjudication motion. In opposing the summary adjudication motion, Silva did not come forward with any admissible evidence supporting her PAGA claim on the nonrounding/nongrace-period issues. Accordingly, the court properly granted summary adjudication on the PAGA cause of action in its entirety.

IV. *Silva's Violation of Appellate Rules*

It is a fundamental principle of appellate law that the lower court's judgment is presumed to be correct. An appellant has the burden to overcome the presumption of correctness and show prejudicial error. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To satisfy this burden, the appellant must comply with rules that ensure both

38

parties receive a fair and complete review of their contentions. Silva failed to comply with several of these rules.

Most important, Silva violated the rule that an appellant's brief must provide "a summary of the significant facts" relevant to the appellate issues raised in the case. (Cal. Rules of Court, rule 8.204(a)(2)(C).) In her appellate briefs, Silva made no effort to summarize all of the evidence presented in the summary judgment proceeding, and frequently ignored the evidence presented by See's Candy. A summary judgment motion triggers a procedure in which the parties pierce the pleadings to determine whether there are disputed facts and thus whether a trial is necessary to resolve the dispute. (*Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1492.) Thus, when a summary judgment is challenged, a reviewing court must examine the facts presented by the parties to determine whether summary judgment or summary adjudication was warranted. By failing to describe all of the evidence proffered in the proceedings, Silva did not satisfy her appellate burden.

Additionally, Silva violated the rule requiring an appellant to provide a record sufficient to determine whether the asserted errors are meritorious. (See *Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039; *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 136.) Silva failed to designate many of See's Candy's documents submitted in support of its summary adjudication and summary judgment motions. The fact that See's Candy did later produce these records in a Respondent's Appendix does not relieve Silva of the obligation to have provided a complete record.

Silva also made numerous factual assertions without providing any record citation. Statements of fact not supported by citations to the record are improper. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246; *Bernard v. Hartford Fire Ins. Co*. (1991) 226 Cal.App.3d 1203, 1205.)

See's Candy contends Silva forfeited her right to appeal by violating these appellate rules. In the interests of justice we have considered the merits of Silva's appellate assertions. However, Silva's counsel should be mindful of the governing appellate rules in future briefs he files in the California courts.

DISPOSITION

We affirm the summary adjudication on the PAGA claim (third cause of action). We reverse the summary judgment on the first and second causes of action with directions to the trial court to enter a new order: (1) granting summary adjudication in See's Candy's favor on the class and individual claims based on Silva's challenges to See's Candy's rounding and grace-period policies; and (2) denying summary adjudication on Silva's individual claims alleging See's Candy violated Silva's rights with respect to rest and meal periods, and business expense reimbursement. Under these orders, the court shall dismiss the class-certified claims and the PAGA claims in their entirety. The parties to bear their own costs on appeal.

HALLER, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

41

Filed 1/5/17

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE


PAMELA SILVA,
Plaintiff and Appellant,
v.
SEE'S CANDY SHOPS, INC.,
Defendant and Respondent.
**D068136**
**San Diego County No. 37-2009-00100692-CU-OE-CTL**


THE COURT:

      The opinion in this case filed December 9, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to California Rules of Court, rule 8.1120(a), for publication are GRANTED.

      IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

      ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

                            Benke

                         _____
                         Acting Presiding Justice


cc: All Parties