Filed 6/25/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| AHMC HEALTHCARE, INC. et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> EMILIO LETONA et al., <br><br> Real Parties in Interest. | B285655 <br><br> (Los Angeles County Super. Ct. No. BC629297) |

ORIGINAL PROCEEDINGS in mandate. Elihu M. Berle, Judge. Petition granted.

Ballard Rosenberg Golper & Savitt, Jeffrey P. Fuchsman and Zareh A. Jaltorossian for Petitioners.

Law Offices of Kevin T. Barnes, Kevin T. Barnes and Gregg Lander; Davtyan Professional Law Corporation and Emil Davtyan;

Blumenthal, Nordrehaug & Bhowmik, Norman B. Blumenthal, Kyle R. Nordrehaug and Aparajit Bhowmik for Real Parties in Interest.

No appearance for Respondent.

———————————————

State law requires employers to pay their employees for all time the employees are at work and subject to the employers' control. (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 839.) The issue in this case is whether an employer's use of a payroll system that automatically rounds employee time up or down to the nearest quarter hour, and thus provides a less than exact measure of employee work time, violates California law.  In the underlying matter, both employers and employees moved for summary adjudication on the issue, and the trial court denied both motions.  Petitioners AHMC Healthcare, Inc., AHMC, Inc., AHMC Anaheim Regional Medical Center, L.P. (Anaheim), and AHMC San Gabriel Valley Medical Center, L.P. (San Gabriel) sought a writ of mandate directing the trial court to grant its motion, contending they had established as a matter of undisputed fact that their system was neutral on its face and as applied.  We agree the undisputed facts established that petitioners' system was in compliance with California law.  Accordingly, we grant the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

Real parties Emilio Letona and Jacquelyn Abeyta, acting on behalf of themselves and others similarly situated, brought suit against petitioners for failure to pay wages, failure to provide meal periods, failure to provide rest periods, failure to furnish timely and accurate wage statements, failure to pay wages to discharged employees, and unfair business practices.  The operative complaint also sought penalties under the Private Attorneys General Act (Lab. Code, § 2698 et seq.).

2

Real party Letona was employed by San Gabriel as a part-time respiratory care technician from 2009 to 2016. Real party Abeyta was employed by Anaheim as an R.N. from November 2015 to August 2016. Both real parties were employed in hourly positions, requiring them to clock in and out, which they did by swiping their ID badges at the beginning and end of their shifts. Real parties' primary contention was that petitioners' method of calculating employee hours violated the Labor Code because the system rounded employees' hours up or down to the nearest quarter hour prior to calculating wages and issuing paychecks, rather than using the employees' exact check-in and check-out times.[1] Both sides moved for summary adjudication to establish whether petitioners' method of calculation passed muster under California law.[2]

---

[1] The original plaintiff was Ernesto Fajardo, an R.N. employed by AHMC Garfield Medical Center, L.P. However, as it was determined that Fajardo's hours and wages had been *increased* as a result of the rounding procedures, he was substituted out for Letona and Abeyta. AHMC Garfield Medical Center L.P., AHMC Monterey Park Hospital, L.P., AHMC Greater El Monte Community Hospital, L.P. and AHMC Whittier Hospital Medical Center, L.P. were named as defendants in the original complaint, but dismissed when the complaint was amended. Real parties acknowledged that the evidence did not show that employees at these medical facilities were undercompensated by the rounding system.

[2] The trial court has not yet decided whether to certify the proposed class. It is well settled that "trial courts . . . should decide whether a class is proper and, if so, order class notice before ruling on the substantive merits of the action" in order to prevent "'one-way intervention'" which occurs when potential plaintiffs "elect to stay in a class after favorable merits rulings but opt out after unfavorable ones." (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1074.) The parties entered into a stipulation waiving this rule. In the stipulation, the parties asked the court to proceed under Code of Civil Procedure section 437c, subdivision (t), which permits the parties to stipulate to adjudication of "a legal issue or a claim for damages other than punitive damages that does not completely dispose of a cause of action, affirmative defense, or issue of duty . . . ."

The parties stipulated to the following facts. Petitioners have a policy that rounds employees' time clock swipes up or down to the nearest quarter hour. For example, if an employee clocks in between 6:53 and 7:07, he or she is paid as if he or she had clocked in at 7:00; if an employee clocks in from 7:23 to 7:37, he or she is paid as if he or she had clocked in at 7:30. In addition, meal breaks that last between 23 and 37 minutes are rounded to 30 minutes.

The time records for San Gabriel and Anaheim for the period August 2, 2012 through June 30, 2016 were examined by Deborah K. Foster, Ph. D., an economic and statistics expert. During this period, employee shifts totaled 527,472 at San Gabriel, and 766,573 at Anaheim. Dr. Foster examined the data over the four-year period from three perspectives: (1) the percentage of employees who gained by having minutes added to their time, compared to the percentage who lost by having minutes deducted; (2) the percentage of employee shifts in which time was rounded up, compared to the percentage in which time was rounded down; and (3) whether the employees as a whole benefitted by being paid for minutes or hours they did not work, or the petitioners benefitted by paying for fewer minutes or hours than actually worked. The parties stipulated to the accuracy of her findings, discussed below.

At San Gabriel, petitioners' rounding procedure added time (9,476 hours) to the pay of 49.3% of the workforce (709 employees) and left 1.2 percent of the workforce (17 employees) unaffected; 49.5 percent of the workforce (713 employees) lost time (a total of 8,097 hours).[3] On a day-by-day analysis, the procedure added time to 45.2 percent of the employee shifts, averaging 4.96 minutes per day; it reduced time from 43.3 percent of employee shifts, averaging 4.82 minutes per employee shift; it had no effect on 11.6 percent of employee shifts. Overall, the

_____

[3] For those employees whose time was reduced, the average net reduction was 2.04 minutes per employee shift.

4

number of minutes added to employee time by the rounding policy exceeded the number of minutes subtracted, adding 1,378 hours to the employees' total compensable time.

At Anaheim, the rounding procedure added time (17,464 hours) to the pay of 47.1 percent of the workforce (861 employees), and had no effect on 0.8 percent of the workforce (14 employees); 52.1 percent of the workforce (953 employees) lost time (a total of 13,588 hours).[4] On a day-by-day analysis, the procedure added time to 46.6 percent of the employee shifts examined, reduced time from 42.3 percent of the employee shifts examined, and had no effect on 11 percent. Overall, the rounding policy added 3,875 hours to the employees' total compensable time.[5]

The parties also stipulated to the net effect of rounding on the two named plaintiffs: over the nearly four-year period examined, Letona lost 3.7 hours, an average of .86 of a minute per shift, for a total dollar loss of $118.41. Abeyta, who worked at San Gabriel for only nine

---

[4]     For those employees whose time was reduced, the average net reduction was 2.33 minutes per employee shift.

[5]     The parties stipulated that the two medical facilities should be considered separately. Nonetheless, petitioners combined the figures for certain purposes, and sometimes referred to the combined figures in their argument. Although real parties asked the court to disregard the combined figures, they too referred to them in their argument. To clarify the record, we note that according to the parties, combining the San Gabriel and Anaheim figures leads to the following results: for the 1,294,045 total employee shifts at the two facilities; 26,938 hours were added to the time of 1,568 employees (48% of the combined total number of employees); 21,685 hours were taken from 1,666 employees (51% of the combined total number of employees); there was no effect on 31 employees (0.9% of the combined total number of employees). The effect of the rounding procedure on San Gabriel and Anaheim employees combined was a net increase of 5,254 in compensated hours.

months during the examined period, lost 1.6 hours, an average of 1.85 minutes per shift, for a total dollar loss of $63.70.

Based on these facts, petitioners contended the rounding procedure was lawful, as it was facially neutral, applied fairly, and provided a net benefit to employees considered as a whole. As proof of its tilt toward employees, petitioners pointed to the stipulated facts that at both facilities, the majority of employee shifts either had time added or were unaffected, and the number of minutes added to employee time from rounding up exceeded the number of minutes subtracted from rounding down. The result was a net loss to petitioners and net gain for their employees, who were paid for 1,378 additional hours at San Gabriel and 3,875 additional hours at Anaheim. Moreover, with respect to the employees who lost time, the total amount was small per employee, particularly when calculated on a daily basis. For example, Letona's loss of 3.7 hours, worked out to less than a minute per shift. Abeyta's loss of 1.6 hours worked out to less than two minutes per shift. Petitioners contended this negligible amount of lost time was not compensable, under a de minimis theory.

Real parties opposed petitioners' motion, and asked the court to grant summary adjudication in their favor on the rounding issue. They contended that an employer's rounding practice is unlawful if it systematically undercompensates employees, and that such systematic undercompensation occurs whenever "the average employee suffers a loss of income due to rounding." According to real parties, petitioners' rounding procedure was unlawful because it resulted in undercompensation for a slight majority of petitioners' employees.[6] Real parties further maintained that a rounding policy that resulted in

---

[6]     As we have seen, the majority of employees at San Gabriel did not lose any compensation as the result of rounding. Real parties used the combined numbers to support the argument that the majority of employees at petitioners' facilities suffered a loss.

any loss to any employee, no matter how minimal, violates California employment law.

The trial court denied both petitioners' and real parties' motions for summary adjudication. At the hearing, the court explained that an employer may be permitted to use a rounding procedure "as long as [it] does not consistently result in a failure to pay employees per time worked," and that "a rounding policy is lawful if it is fair and neutral on its face and it's used in such a manner that would not result over a period of time in failure to compensate the employees properly for all the time that they have worked." The court further explained that determining whether a rounding policy is slanted against employees "is a factual issue and not a legal one," and that "the analysis turns on whether the policy is used in such a manner that will not result over a period of time in failure to compensate employees properly for all the time that they've actually worked." The court cited *Shiferaw v. Sunrise Senior Living Mgmt., Inc.* (C.D.Cal., Mar. 21, 2016, CV-13-02171-JAK (PLAx)) 2016 U.S. Dist. LEXIS 187548 (*Shiferaw*) for the proposition that "a plaintiff may establish [that] the employ[er]'s facially-neutral policy is unlawful using either a net effect approach or an employee percentage approach." The court expressed concern that an employer could manipulate the system by "consistently overcompensat[ing]" low wage earners and "consistently overcompensat[ing]" "high wage earners" in order to "serve [the] company's whims at the expense of the employees." The court concluded that the evidence that 49.5 percent of the employees at San Gabriel and 52.1 percent of the employees at Anaheim had their hours reduced supported a finding that the rounding policy "consistently favored the employer." Thus, the court concluded, the evidence "raise[d] triable issues as to whether the rounding policies systematically under-compensate employees."

Petitioners filed a petition for writ of mandate, seeking reversal of the order denying their motion for summary adjudication. On February 8, 2018, this court issued an alternative writ of mandate, instructing

the trial court either to vacate the order insofar as it denied petitioners' motion and make a new and different order granting the motion or, in the alternative, to show cause why a peremptory writ of mandate should not issue. The trial court did not vacate its original order.

## DISCUSSION

Section 785.48 of title 29 of the Code of Federal Regulations (section 785.48), promulgated many decades ago, allows employers to compute employee worktime by rounding "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour," provided that the rounding system adopted by the employer "is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." (29 C.F.R. § 785.48(b).)[7] Federal district courts interpreting the provision have almost universally concluded that a rounding system is valid if it "average[s] out sufficiently," rejecting claims that minor discrepancies in individual employee's wage calculations establish that the employee is entitled to assert a claim for underpayment of wages. (*East v. Bullock's Inc.* (D. Ariz. 1998) 34 F.Supp.2d 1176, 1184 [employee presented evidence of 24 occasions of time reductions of less than 15 minutes]; accord, *Alonzo v. Maximus, Inc.* (C.D. Cal. 2011) 832 F.Supp.2d 1122, 1126-1127 ["[A]n employer's rounding practices comply with § 785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment. . . . [¶] An employer's rounding practices violate § 785.48(b) if they systematically undercompensate employees"]; *Mendez v. H.J. Heinz Co., L.P.* (C.D. Cal., Nov. 13, 2012, No. CV-12-5652-GHK (DTBx)) 2012 U.S.

---

[7] Section 785.48 is part of section 785, title 29 of the Code of Federal Regulations, the regulations that define "what constitutes working time" for purposes of determining whether employees are receiving the minimum wage or are entitled to overtime. (29 C.F.R., § 785.1.)

Dist. LEXIS 170785, p. *6 ["Rounding policies may be permissible if they, 'on average, favor neither overpayment nor underpayment' of wages"]; *Eddings v. Health Net, Inc.* (C.D. Cal., Mar. 23, 2012, Case No. CV-10-1744-JST (RZx)) 2012 U.S. Dist. LEXIS 51158, p. *11 (*Eddings*) ["[A]n employer's rounding practices comply with § 785.48(b) if the employer applies a consistent rounding policy that, on average, favors neither overpayment nor underpayment"].)[8]

In *Corbin v. Time Warner Entm't-Advance / Newhouse P'ship.* (9th Cir. 2016) 821 F.3d 1069 (*Corbin*), the first federal appellate court to interpret the regulation "join[ed] the consensus of district courts that have analyzed this issue . . . ." (*Id.* at p. 1079.) The plaintiff there had lost $15.02 in total compensation over a one-year period, and contended that "if an employee loses any compensation due to the operation of a company's rounding policy, that policy should be found to violate the federal rounding regulation." (*Id.* at pp. 1076-1077.) "In other words, . . . unless every employee gains or breaks even over every pay period or set of pay periods analyzed, an employer's rounding policy violate[s] the

---

[8]    We note that in each of the above-cited cases, the federal courts applied section 785.48 to state law claims. (*East v. Bullock's, Inc.*, *supra*, 34 F.Supp.2d at pp. 1183-1184 [Arizona law]; *Alonzo v. Maximus*, *supra*, 832 F.Supp. at p. 1126 [California law]; *Mendez v. H.J. Heinz Co., L.P.*, *supra*, 2012 U.S. Dist. LEXIS 170785 at p. *2 [California law]; *Eddings v. Health Net, Inc.*, *supra*, 2012 U.S. Dist. LEXIS 51158 at p. *7 [California law].) Courts deciding claims asserted under the federal Fair Labor Standards Act have interpreted section 785.48 in the same manner. (See, e.g., *Bustillos v. Board of County Commissioners of Hidalgo County* (D.N.M., Oct. 20, 2015, No. CIV-13-0971 JB/GBW) 2015 U.S. Dist. LEXIS 162697, p. *66, affd. in pertinent part *sub nom. Jimenez v. Board of County Commissioners of Hidalgo County* (10th Cir. 2017) 697 Fed.Appx. 597 ["Employers may . . . lawfully use rounding policies to record and compensate time, as long as the policy does not 'consistently result[] in a failure to pay employees for time worked'"]; *Sloan v. Renzenberger, Inc.* (D. Kan., Apr. 15, 2011, No. 10-2508-CM-JPO) 2011 U.S. Dist. LEXIS 41018, p. *8 ["[R]ounding is unlawful if it consistently results in a failure to pay employees for time worked"].)

9

federal rounding regulation . . . ." (*Id.* at p. 1077, italics omitted.) The Ninth Circuit rejected that contention for multiple reasons. First, the court observed, the plaintiff's interpretation "read into the federal rounding regulation an 'individual employee' requirement that does not exist. The regulation instead explicitly notes that it applies to 'employee*s*' and contemplates wages for the time '*they*' actually work." (*Ibid.*, quoting 29 C.F.R. § 785.48(b).) "If the rounding policy was meant to be applied individually to each employee to ensure that no employee ever lost a single cent over a pay period, the regulation would have said as much." (*Corbin, supra,* at p. 1077.)

The court further found that interpreting the regulation to require the rounding to work out neutrally for every employee "would undercut the purpose" and "gut the effectiveness" of the typical rounding policy. (*Corbin, supra,* 821 F.3d at p. 1077.) "Employers use rounding policies to calculate wages efficiently; sometimes, in any given pay period, employees come out ahead and sometimes they come out behind, but the policy is meant to average out *in the long-term.* If an employer's rounding practice does not permit both upward and downward rounding, then the system is not neutral . . . ." (*Ibid.*) The plaintiff's interpretation "would require employers to engage in the very mathematical calculation that the federal rounding regulation serves to avoid," requiring employers to "'un-round' every employee's time stamps for every pay period to verify that the rounding policy had benefitted every employee." (*Ibid.*) "The proper interpretation of the federal rounding regulation cannot be one that renders it entirely useless." (*Ibid.*)

Finally, the court expressed concern that the plaintiff's interpretation of the regulation would "reward[] strategic pleading, permitting plaintiffs to selectively edit their relevant employment windows to include only pay periods in which they may have come out behind while chopping off pay periods in which they may have come out ahead." (*Corbin, supra,* 821 F.3d at p. 1077.) The court did not believe

10

that "the legality of an employer's rounding policy" should "turn[] on the vagaries of clever pleading." (*Id.* at p. 1078.)

Applying its reasoning to the facts presented, the *Corbin* court found that the rounding policy at issue "passe[d] muster." The policy was "facially neutral," the court observed, as the employer "rounds all employee time punches to the nearest quarter-hour without an eye towards whether the employer or the employee is benefitting from the rounding." (*Corbin, supra*, 821 F.3d at pp. 1078-1079.) Moreover, the plaintiff's own compensation records demonstrated that the rounding policy was "neutral in application": "sometimes [he] gained minutes and compensation, and sometimes [he] lost minutes and compensation." Although the plaintiff was able to show an aggregate loss of $15.02, "[the] numbers . . . fluctuated from pay period to pay period, and . . . a few more pay periods of employment may have tilted the total time/compensation tally in the other direction . . . ." (*Id.* at p. 1079.)

Because California's wage laws are patterned on federal statutes, in determining employee wage claims, California courts may look to federal authorities for guidance in interpreting state labor provisions. (*Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805, 817; accord, *Huntington Memorial Hospital v. Superior Court* (2005) 131 Cal.App.4th 893, 903.) In *See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 903 (*See's I*), the court agreed with the federal courts' interpretation of section 785.48.[9] There, See's Candy

_____

[9] Real parties do not dispute that section 785.48 is applicable to claims made under state law. We note that California's Division of Labor Standards Enforcement (DLSE) adopted the federal regulation in its Enforcement Policies and Interpretations Manual (DLSE Manual or Manual): "The Division utilizes the practice of the U.S. Department of Labor of 'rounding' employee's hours to the nearest five minute, one-tenth or quarter hour for purposes of calculating the number of hours worked pursuant to certain restrictions." (DLSE Manual (Revised, June 2002 Update), ¶ 47.1, "Rounding.") The court in *See's I* agreed with the DLSE and the federal courts in concluding that section 785.48 and the policies underlying it "apply
(*Fn. is continued on the next page.*)

11

used a timekeeping system that automatically rounded employee punches up or down to the nearest tenth of an hour. (*Id*. at p. 892.) The plaintiff brought a class action for unpaid wages, and moved for summary adjudication that the rounding policy was inconsistent with federal and state law. (*Id*. at pp. 893-894.) The defense expert's analysis showed that 59.1 percent of the affected employees had a net gain in time; 33 percent had a net loss; and 7.9 percent had no difference. (*Id*. at p. 896.) The plaintiff herself received a net benefit of five seconds per shift, but lost 3.6 seconds of overtime. (*Id*. at pp. 896-897.)

The court held that "a rounding-over-time policy" does not systematically undercompensate employees if it is "neutral, both facially and as applied," because "its net effect is to permit employers to efficiently calculate hours worked without imposing any burden on employees. [Citation.]" (*See's I, supra,* 210 Cal.App.4th at p. 903.) Having found that an employer is entitled to use rounding if the system is "fair and neutral" on its face and in practice (*id*. at pp. 903, 907), the court went on to consider whether a reasonable trier of fact could find that See's Candy's policy was consistent with section 785.48 under the evidence presented. Because the defense expert's analysis established that the rounding resulted in a total gain of thousands of hours for the employee class members as a whole, that most of the class member were fully compensated for every minute of their time, and that "the

---

equally to the employee-protective policies embodied in California labor law." (*See's I, supra,* 210 Cal.App.4th at p. 903.) The court observed that "the rounding practice has long been adopted by employers throughout the country." (*Ibid*.) To construe the requirements of California's wage laws in a manner inconsistent with federal law, "would preclude [California] employers from adopting and maintaining rounding practices that are available to employers throughout the rest of the United States.'" (*Ibid*., quoting *East v. Bullock's Inc.*, *supra*, 34 F.Supp.2d at p. 1184.)

12

majority was paid for more time than their actual working time," the court found that See's Candy had met its burden to show a triable issue of fact regarding whether its nearest-tenth rounding policy was proper under California law.[10] (*Id.* at p. 908.)

Focusing on the evidence that "the majority" of See's Candy employees were overcompensated under the system at issue in *See's I*, real parties contend that the case stands for the proposition that a rounding policy is unlawful where a bare majority of employees lose compensation.[11] We do not read the holding in *See's I* to create such rule. Because the expert analysis established that the class as a whole gained time and compensation *and* that the majority of See's Candy's

---

[10] In *See's I*, the appellate court reviewed the trial court's order granting the plaintiff's motion for summary adjudication. In a subsequent decision, *Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235 (*See's II*), the appellate court affirmed a grant of summary judgment in favor of See's Candy on essentially the same facts: "(1) the aggregate impact of rounding actual time punches produced a net surplus of 2,749 employee work hours in time paid and thus resulted in a net economic benefit to the employees as a group; (2) 67 percent of the employees had either no impact or a net gain under the rounding policy; (3) the rounding policy did not negatively impact employee overtime compensation: it was 'virtually a wash -- neither the employees nor See's [Candy] benefited from this rounding practice'; and (4) there was no meaningful impact on [the plaintiff's] hours paid under the rounding practice; she obtained an aggregate surplus of 1.85 hours." (*Id.* at pp. 242, 250.) The court concluded that "See's Candy met its burden to show the rounding policy is fair and neutral on its face and is used in a manner that over a relevant time period will compensate the employees for all the time they have actually worked." (*Id.* at p. 252.)

[11] As real parties acknowledge, the majority of employees at San Gabriel either had time added to their shifts and received compensation for time they did not work, or broke even. A slight majority (52.1 percent) of Anaheim employees had time (an average of 2.33 minutes) subtracted. Only by combining the data for the two facilities can real parties assert that the majority of employees suffered a loss.

13

employees gained time and compensation, the court had no basis to resolve whether either factor was decisive. However, two recent federal district courts have considered the issue and, relying on *Corbin* and *See's I*, concluded that the fact that a slight majority of employees lost time over a defined period was not sufficient to invalidate an otherwise neutral rounding practice. (*Utne v. Home Depot U.S.A., Inc.* (N.D. Cal., Dec. 4, 2017, Case No. 16-cv-01854-RS) 2017 U.S. Dist. LEXIS 199184 (*Utne*); *Boone v. PrimeFlight Aviation Services, Inc.* (E.D.N.Y., Feb. 20, 2018, No. 15-CV-6077 (JMA) (ARL)) 2018 U.S. Dist. LEXIS 28000 (*Boone*).)

In *Utne*, the timekeeping system was programmed to round either up or down to the nearest quarter of an hour for purposes of calculating employee compensation. (*Utne, supra*, 2017 U.S. Dist. LEXIS 199184 at p. *5.) The employer's expert performed an analysis of a representative sample of the potential class over a five-year period and found that: 51.3 percent of shifts had minutes added rather than subtracted; in more than half of all analyzed pay periods, employees were credited with extra minutes; the average potential class member was paid for an additional 11.3 minutes; and overall, the employer paid for an additional 339,331 minutes (5,656 hours) when compared to the actual minutes employees worked. (*Id*. at p. *7.) However, the plaintiff had lost time -- an average of 36 seconds per shift -- and of the 13,387 employees analyzed, 53 percent were negatively impacted by the rounding, an average of 141.7 minutes per employee over the five-year period. (*Id*. at p. *9.) The court nonetheless granted summary judgment in favor of the employer: "The rounding policy rounds both up and down, and is thus facially neutral. There is no evidence that the rounding policy is applied differently to [the plaintiff] or to any of the proposed class members. [The employer's] expert calculations are sufficient to establish that the practice does not systematically undercompensate employees over time." (*Id*. at p. 11, italics omitted.) The court observed that the figures were "consistent with [the

14

employer's] contention that rounding contemplates the possibility that in any given time period, some employees will have net overcompensation and some will have net undercompensation. Given the expected fluctuation with respect to individual employees, shifting the time window even slightly could flip the figures." (*Id*. at pp. *11-12.)[12]

*Boone* also involved a quarter-hour rounding system. As in *Utne*, expert evaluation of employee compensation during the relevant period resulted in evidence that a majority (58.5%) of all time entries were either neutral or rounded in favor of the employee and that the employer suffered a loss overall, but that the majority of employees (55.8%), including the plaintiff, suffered minor losses in compensated time. (*Boone*, *supra*, 2018 U.S. Dist. LEXIS 28000 at pp. *6-7, 26.) Relying on the Ninth Circuit's conclusion in *Corbin* that "'the rounding policy is not meant to "ensure that no employee ever lost a single cent

_____

[12] The *Utne* court rejected the plaintiff's request to certify as a class those employees who lost time as "expressly foreclosed by *Corbin*, which explained that the federal rounding regulation was not meant to apply individually to each employee." (*Utne*, *supra*, 2017 U.S. Dist. LEXIS 199184 at p. *14, citing *Corbin*, *supra*, 821 F.3d at p. 1077.) "Provided [the] rounding policy does not systematically undercompensate employees over time, [the plaintiff] cannot defeat summary judgment on his rounding claims by limiting his proposed class to only those employees who happen to come out behind during the class period. As the Ninth Circuit explained in *Corbin*, the federal regulation did not intend to reward strategic pleading where a plaintiff includes only pay periods during which he or she came out behind a few minutes." (*Id*. at p. *15.) The court also rejected the plaintiff's contention that *See's I* "goes too far under California law and does not reflect how the California Supreme Court would treat rounding": "Because California law does not address rounding one way or another, courts must ask whether the federal rule is consistent with California wage and hour law. The California Court of Appeal [in *See's I*] carefully studied the issue and answered that question in the affirmative. [Citation.]" (*Utne, supra,* at pp. *13-14.)

15

over a pay period"'"" (*Boone, supra*, at p. *27, quoting *Corbin, supra*, 821 F.3d at p. 1077), the court granted summary judgment in favor of the employer, finding that the plaintiff "failed to raise a genuine issue of material fact on whether [the employer's] timekeeping system did not 'result over a period of time, in failure to compensate the employees properly for all the time they have actually worked.'" (*Boone, supra*, at p. *28, quoting 29 C.F.R. § 785.48(b).) The court explained: "[A]n analysis of the putative class as a whole demonstrates that the rounding policy was neutral. It is undisputed that (1) 58.5% of all time entries resulted in either neutral rounding or rounding in favor of the employee; (2) the 138 putative class members gained compensation or broke even on approximately 54.5% of their shifts; and (3) 42% of the putative class members gained compensation from rounding over the entire length of the class period analyzed. Further, . . . Plaintiff does not refute that [when employees lost time,] the 138 putative class members lost on average 15.67 seconds per shift. Although the data analyzed here . . . did not average out to 0, Defendant's expert calculations are sufficient to establish that the practice does not systematically undercompensate employees over time." (*Id.* at pp. *27-28, italics omitted.)

Real parties contend that two federal cases -- *Eddings, supra*, 2012 U.S. Dist. LEXIS 51158 and *Shiferaw, supra*, 2016 U.S. Dist. LEXIS 187548 -- support the position that section 785.48 is violated where the majority of the employees suffer a minor loss in compensation. In *Eddings*, one of the two systems challenged in the complaint required the employees to round their own time up or down, rather than input their time and leave it to an impartial system to round up or down according to a fixed formula. The employer claimed to have communicated to the employees that time was always to be rounded in their favor, but some employees submitted declarations stating they were told to round down. Accordingly, the court found the existence of a genuine issue of material fact "both as to the facial

16

neutrality of the [system] and to the effects of its application . . . . " (*Eddings, supra,* at pp. *15-16.) Because the policy "could have been interpreted differently by different associates," and it was "at best ambiguous as to whether employees are ever allowed to round up," the fact that the majority of employees gained time was not determinative. (*Id.* at pp. *15-16.)

In *Shiferaw*, which involved a system that automatically rounded time to the nearest quarter hour, the court stated that "two pragmatic approaches" could be used "to gather data" in determining whether a rounding system, neutral in its face, was neutral in application: "(1) compare all rounded punches with the actual punch times to determine the overall net effect -- in hours, minutes, and/or seconds -- of the rounding; and (2) compare the percentage of employees for whom the rounding resulted in a net loss of time -- those who were undercompensated -- with the percentage of employees for whom the rounding resulted in overcompensation." (*Shiferaw, supra,* 2016 U.S. Dist. LEXIS 187548 at pp. *6, 81.) The plaintiffs' expert provided data establishing that the rounding policy resulted in net undercompensation of the employees in the amount of 1,783 hours *and* that the majority of employee (53.3%) lost time due to rounding. (*Id.* at p. 83.) Contrary to real parties' assertion that "the . . . court concluded [the] . . . expert created a triable issue of fact under either the net effect or percentage methodology," the court considered both assumptions in finding "[the] evidence . . . sufficient to show the existence of a genuine dispute as to whether [the employer's] challenged rounding policy results in a 'failure to compensate the employees properly for all the time they have actually worked.'" (*Id.* at p. 85, italics omitted.) As the plaintiffs introduced evidence that both the net effect and percentage effect analysis supported their claims, the court had no cause to consider whether a difference in either datapoint would have led to a different result. Moreover, *Shiferaw* was decided before the Ninth

17

Circuit issued its decision in *Corbin*. To the extent it conflicts with that decision, it is no longer good law.

Here, the rounding system is neutral on its face. It "rounds all employee time punches to the nearest quarter-hour without an eye towards whether the employer or the employee is benefitting from the rounding." (*Corbin*, *supra*, 821 F.3d at pp. 1078-1079.) It also proved neutral in practice. At San Gabriel, a minority of employees lost time, the remainder either gained time or broke even, and overall it caused the employer to compensate employees for 1,378 hours not worked. At Anaheim, although a slight majority of employees (52.1 percent) lost time, overall, employees were compensated for 3,875 more hours than they worked. Because petitioners presented undisputed evidence that the rounding system was neutral on its face, and that employees as a whole were significantly overcompensated, the evidence established that petitioners' rounding system did not systematically undercompensate employees over time. The fact that a bare majority at one hospital lost minor sums during a discrete period did not create an issue of fact as to the validity of the system. We agree with the court in *Corbin* that the regulation does not require that every employee gain or break even over every pay period or set of pay periods analyzed; fluctuations from pay period to pay period are to be expected under a neutral system. (See also *Utne*, *supra*, 2017 U.S. Dist. LEXIS 199184 at p. *12 ["[R]ounding contemplates the possibility that in any given time period some employees will have net overcompensation and some will have net undercompensation"]; *Boone*, *supra*, 2018 U.S. Dist. LEXIS 28000 at pp. *27-28 [rounding policy was neutral as applied where majority of time entries resulted in rounding in favor of employees, class members broke even or gained compensation on their shifts, and bare majority of class members lost time, but only an average of 15.67 seconds per shift].) We further agree with the court in *See's I* and *See's II* that a system is fair and neutral and does not systematically undercompensate employees where it results in a net surplus of

18

compensated hours and a net economic benefit to employees viewed as a whole.

Nothing in our analysis precludes a trial court from looking at multiple datapoints to determine whether the rounding system at issue is neutral as applied. Such analysis could uncover bias in the system that unfairly singles out certain employees. For example, as the trial court discussed, a system that in practice overcompensates lower paid employees at the expense of higher paid employees could unfairly benefit the employer. However, real parties presented no evidence of a bias in the system or that the policy was applied differently to different employees. Dr. Foster analyzed the data on an overall basis, a per shift basis and a per employee basis. Her analysis established that overall, at both hospitals, the rounding policy benefitted employees and caused petitioners to overcompensate them. Her per shift analysis established that for the majority of shifts, the employees at both facilities gained compensable time. Moreover, at San Gabriel, the majority of employees gained time and compensation or broke even during the approximately four years of the study. The sole discrepancy was at Anaheim where a slight majority (52.1%) lost an average of 2.33 minutes per employee shift. But where the system is neutral on its face and overcompensates employees overall by a significant amount to the detriment of the employer, the plaintiff must do more to establish systematic undercompensation than show that a bare majority of employees lost minor amounts of time over a particular period. Because the petitioners' employees benefited overall from the rounding policy, the fact that a bare majority lost a minimal amount of time was not sufficient to create a triable issue of a fact. Petitioners' motion for summary adjudication should have been granted.[13]

_____

[13] Because we conclude petitioners' rounding system complies with section 785.48, we do not consider whether the de minimus rule, which permits "insubstantial or insignificant periods of time beyond the scheduled
(*Fn. is continued on the next page.*)

## DISPOSITION

The petition is granted.  Let a peremptory writ of mandate issue directing respondent superior court to set aside that portion of its order of September 26, 2017 denying petitioners' motion for summary adjudication of issues, and issue a new order granting such motion. Petitioners are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION**

MANELLA, J.

We concur:

EPSTEIN, P. J.

WILLHITE, J.

---

working hours to be disregarded" (29 C.F.R. § 785.47) -- applies in California. That issue is currently before the Supreme Court in *Troester v. Starbucks Corp.*, rev. granted Aug. 17, 2016, S234969.