Filed 6/8/20; certified for publication 6/30/20 (order attached)

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

<table>
<tr><td>JOANA DAVID,<br><br>     Plaintiff and Appellant,<br>v.<br>QUEEN OF THE VALLEY<br>MEDICAL CENTER,<br><br>     Defendant and Respondent.</td><td>A157336<br><br>(Napa County<br>Super. Ct. No. 26-67321)</td></tr>
</table>

In this wage and hour litigation, plaintiff Joana David (plaintiff) appeals from a judgment entered after the trial court granted her former employer, Queen of the Valley Medical Center's (QVMC or hospital) motion for summary judgment. Plaintiff contends the trial court "ignored" her evidence and violated California law by adjudicating her meal and rest period claims, and her time-rounding claim, in favor of QVMC.

We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked as a registered nurse at the hospital from 2005 to 2015. Plaintiff was an hourly employee. During the relevant time period—September 2011 to May 2015—plaintiff worked two 12-hour shifts per week. Plaintiff clocked in and out of work using an electronic

1

timekeeping system that automatically rounded time entries up or down to the nearest quarter-hour.

After her employment ended, plaintiff filed a complaint against QVMC alleging seven causes of action, including claims for failure to provide meal and rest periods, and failure to pay minimum wages. As relevant here, plaintiff alleged she was not paid for hours worked off-the-clock, such as when she performed " 'charting' " work, and when her meal and rest periods were interrupted by co-workers and " 'charge nurses' " who asked her work-related questions. Plaintiff also claimed she was not paid all wages because of the hospital's time-rounding policy.

*Motion for Summary Judgment*[1]

QVMC argued its meal and rest period policies complied with California law, and that whenever plaintiff reported a missed break, she received an extra hour of pay. The hospital also contended it could not be held liable for missed meal or rest periods of which it was unaware. In addition, QVMC argued plaintiff was paid for all time worked, and that its rounding policy was legal. The hospital offered the following supporting evidence, derived largely from plaintiff's deposition testimony:

QVMC employees are entitled to an uninterrupted meal period of at least 30 minutes within the first five hours of a shift. Employees who work

---

[1] The factual recitation in plaintiff's opening brief is not helpful. Plaintiff does not describe QVMC's motion for summary judgment, nor summarize the evidence offered in support of the motion. Instead, plaintiff presents only the evidence favorable to her. At the summary judgment stage, the trial court liberally construes the opposing party's evidence, but the court does not consider that party's evidence in a vacuum. (*Donohue v. AMN Services, LLC* (2018) 29 Cal.App.5th 1068, 1088, 1084 & fn. 20 (*Donohue*), review granted Mar. 27, 2019, S253677.) We summarize the evidence offered in support of, and opposition to, the summary judgment motion.

more than 10 hours in a shift are entitled to a second uninterrupted meal period of at least 30 minutes. Those employees, however, may waive one of the meal periods. Employees are also entitled to an uninterrupted 15-minute rest period for every four hours of work. An employee who misses a meal or rest period must complete an "edit" or "correction" sheet, so QVMC can pay the employee a one-hour premium. The hospital's practice is to pay a premium for a missed meal or rest period "whenever . . . requested."

Under the hospital's meal period policy, plaintiff was entitled to two meal breaks per 12-hour shift. Plaintiff waived her second meal break. Plaintiff scheduled meal breaks by writing her name next to a time slot on a whiteboard. At the appointed time, the "break nurse" relieved plaintiff. If no break nurse was available, the charge nurse relieved plaintiff. Plaintiff did not recall missing a meal period or notifying a supervisor about a missed meal period. Plaintiff's supervisors did not interrupt her meal periods with work-related questions or requests; they never told her to end her break early. The only complaint plaintiff had regarding her meal breaks was that they sometimes happened "too late" in the shift.

Plaintiff's rest breaks operated similarly: a break nurse or charge nurse relieved plaintiff. On the few occasions when plaintiff missed a rest period, she received an extra hour of pay. Plaintiff's supervisors did not interrupt her rest periods with work-related questions or requests. On occasion, plaintiff's co-workers asked her questions while she was on a rest break, but when plaintiff responded that she was on a break, the co-workers left her alone. Plaintiff did not recall complaining to a supervisor about rest periods.

QVMC prohibited off-the-clock work. Plaintiff always clocked in before performing work; she did not recall working after she clocked out. Plaintiff's

3

time entries were rounded to the nearest quarter hour, either up or down a maximum of seven minutes, depending on when plaintiff clocked in or out. On several occasions, plaintiff benefitted from the rounding policy. Beginning in June 2013, plaintiff's time entries contained a prompt asking her whether she received meal and rest breaks. When plaintiff clocked out, she honestly answered the prompt. Plaintiff's supervisors never discouraged her from reporting a missed meal or rest period.

QVMC's expert, Scott Sternberg, analyzed plaintiff's time entries to determine whether the rounding policy favored plaintiff or the hospital. He determined the policy was facially neutral, and that the effects of the policy varied over time, "including day to day, week to week, and month to month. This indicates that the time period analyzed can alter the results, particularly considering the very small difference between the total hours recorded by the time clock and the total unrounded elapsed time between the punches. For example, when looking at a 128-day period . . . from September 24, 2011, to January 29, 2012, I found that the time clock recorded 400.75 hours while the total unrounded elapsed time between the punches is 400.72 hours, indicating a difference of .03 hours in [plaintiff's] favor."

Sternberg determined 47 percent of plaintiff's rounded time entries favored plaintiff or had no impact, and 53 percent favored QVMC. According to Sternberg's review of plaintiff's time records, the hospital paid plaintiff for 2,995.75 hours of work; had punch time entries been used, QVMC would have paid plaintiff for 3,003.5 hours, a difference of .26 percent.

*Opposition and Reply*

Plaintiff argued her meal and rest periods were "incomplete or interrupted" and that she had no obligation to report these violations to the hospital because her time records reflected "short meal periods." As to her

4

claim for unpaid wages, plaintiff argued she was undercompensated because she worked off-the-clock and during breaks. She also contended the hospital's rounding policy systematically undercompensated her, and that any bias in favor of QVMC, "however small, may establish an illegal [rounding] practice."

In a supporting declaration, plaintiff claimed she performed "charting" work after clocking out because her managers wanted hospital employees to avoid overtime. Plaintiff averred her lunch breaks were "often interrupted . . . with questions about patients or work-related tasks by coworkers and Charge Nurses." She "often took short meal periods or rest breaks because supervisors would walk into the break room and look at the clock, signaling that they expected [her] to clock-in."

Plaintiff "felt pressured to clock-in early from rest and meal periods because of supervisor's behavior and because patients needed" care. She was "expected to put patients' needs ahead of [her] own, even if it meant not taking timely and complete rest breaks and meal periods." According to plaintiff, break nurses often provided late coverage—or no coverage—for meal and rest periods. Plaintiff "often" reported "late, missing, incomplete or interrupted" meal and rest periods to charge nurses and "was not compensated."

Plaintiff's expert, Aaron Woolfson, offered a supporting declaration criticizing Sternberg's methodology and conclusions. Woolfson opined the hospital's failure to pay plaintiff for 7.75 hours of work over the relevant time period—a total of 1.56 minutes per shift— "conclusively establishe[d]" the rounding policy "was biased." Woolfson did not analyze QVMC's timekeeping policy or plaintiff's time sheets.

5

QVMC's reply urged the court to exclude the portions of plaintiff's self-serving declaration that contradicted her deposition testimony, and to reject much of Woolfson's declaration. Substantively, the hospital argued: (1) there was no evidence it knew or should have known plaintiff was working off-the-clock; (2) plaintiff's claim that she told charge nurses about the meal and rest period violations did not provide QVMC with notice of the alleged violations because charge nurses were not plaintiff's supervisors; (3) plaintiff's timesheets did not " 'prove' " meal and rest period violations; and (4) the rounding policy was neutral and did not systematically disfavor plaintiff.

*Order Granting Summary Judgment*

In a thorough written order, the court granted QVMC's motion for summary judgment. First, it excluded portions of plaintiff's declaration that were inconsistent with her deposition testimony and/or lacked foundation. The court also excluded the portion of Woolfson's declaration describing alleged flaws in Sternberg's analysis and conclusions, determining Woolfson's opinion lacked foundation.[2]

Next, the court concluded QVMC was entitled to judgment on plaintiff's meal and rest period claims. It summarized the hospital's extensive evidence that plaintiff's supervisors did not urge her to work during meal or rest periods and that she did not report missing a meal or rest break to her supervisors. As the court observed, plaintiff was asked at her deposition whether charge nurses were supervisors, she "replied, 'I don't know,' " and

_____

[2] Plaintiff does not challenge these evidentiary rulings. We consider the point waived. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; *Silva v. See's Candy Shops, Inc.* (2016) 7 Cal.App.5th 235, 250 (*See's Candy II*) [plaintiff complained trial court " 'ignore[d]' " her evidence, but failed to explicitly challenge the court's evidentiary ruling].)

6

"testified that she did not know whether any supervisor ever interrupted her with a work question during her lunch break. . . . She also stated she did not know whether 'any supervisor ever knew' she was being interrupted by her coworkers during [her] meal breaks."

The court considered plaintiff's declaration, where she averred charge nurses and co-workers interrupted her breaks with work-related questions. It gave this statement "every reasonable inference" and determined it did not create a triable issue as to whether QVMC had actual or constructive knowledge her meal and rest breaks were being interrupted with work-related discussions. According to the court, "walking into the break room and looking at the clock, without more," did not constitute "a direction to prematurely terminate a break."

Third, the court held QVMC was entitled to judgment on plaintiff's claim that she was not paid for all time worked. It noted the hospital produced evidence that it did not allow employees to perform off-the-clock work and that plaintiff's evidence did not create a triable issue. The court gave "every reasonable inference" to the statement in plaintiff's declaration that she performed charting work after clocking out because managers instructed hospital employees to avoid overtime, but determined an "instruction to avoid overtime, without more, cannot reasonably be understood as an affirmative direction to perform work off-the-clock. This is particularly true in light of Plaintiff's extensive deposition testimony" where she denied performing off-the-clock work.

Finally, the court determined QVMC was entitled to judgment on plaintiff's rounding claim. It determined QVMC made a prima facie case that its rounding policy was neutral, and that plaintiff failed to rebut this showing. The court held Woolfson's declaration, which criticized Sternberg's

7

"approach, analysis and conclusions," did not create a triable issue on whether the rounding policy was biased.  As the court explained, Woolfson did not analyze QVMC's rounding policies or plaintiff's timekeeping records, and "[w]ithout evidence of such an analysis, . . . Woolfson's assertion that '. . . Sternberg's own evidence (53% of shifts rounded down) and 7.75 unpaid hours conclusively established defendant's rounding system was biased' lacks foundation . . . .  Moreover, it is inconsistent with the holding in *Corbin* [*v. Time Warner Entertainment-Advance/Newhouse Partnership* (9th Cir. 2016) 821 F.3d 1069 (*Corbin*)] that a finding that some employee has lost some compensation is not sufficient evidence for a finding of bias."

The court entered judgment for QVMC.

### DISCUSSION

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)  The party opposing summary judgment "shall set forth the specific facts showing that a triable issue of material fact exists." (Code Civ. Proc., § 437c, subd. (p)(2).)  A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.)

Summary judgment serves to "cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact

8

necessary to resolve their dispute." (*Aguilar, supra,* 25 Cal.4th at p. 843.)
We review the grant of summary judgment independently, "considering all
of the evidence the parties offered in connection with the motion (except
that which the [trial] court properly excluded) and the uncontradicted
inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001)
26 Cal.4th 465, 476.) Plaintiff, as the appellant, has "the burden of
establishing reversible error." (*Demara v. The Raymond Corp.* (2017)
13 Cal.App.5th 545, 552.)

## I.

### *Meal and Rest Period Claims*

"State law obligates employers to afford their nonexempt employees
meal periods . . . during the workday." (*Brinker Restaurant Corp. v. Superior
Court* (2012) 53 Cal.4th 1004, 1018 (*Brinker*).) An employer satisfies this
obligation "if it relieves its employees of all duty, relinquishes control over
their activities and permits them a reasonable opportunity to take an
uninterrupted 30-minute break, and does not impede or discourage them
from doing so."[3] (*Id.* at p. 1040.) In addition, Labor Code section 512 requires
a meal period be provided "no later than the end of an employee's fifth hour of
work." (*Brinker,* at p. 1041.) "[T]he employer is not obligated to police meal
breaks and ensure no work thereafter is performed." (*Id.* at p. 1040.) "A
missed meal break does not constitute a violation if the employee waived the

---

[3] To the extent plaintiff claims these principles do not apply to nurses,
we reject the argument as undeveloped and unsupported by relevant
authority. (*Parisi v. Mazzaferro* (2016) 5 Cal.App.5th 1219, 1226, fn. 10.)
*Alberts v. Aurora Behavioral Health Care* (2015) 241 Cal.App.4th 388
(*Alberts*) does not stand for the proposition that different meal and rest break
rules apply to nurses.

meal break, or otherwise voluntarily shortened or postponed it." (*Lampe v. Queen of the Valley Medical Center* (2018) 19 Cal.App.5th 832, 851.)

Similar principles apply to rest periods. (*Brinker, supra,* 53 Cal.4th at p. 1028.) An employer must " 'authorize and permit all employees to take rest periods' " at the rate of 10 minutes of rest for each four hours the employee works " 'or major fraction thereof.' " (*Ibid.*)

The hospital provided meal breaks as required by law. QVMC provided one meal period for every five hours of work, and a second meal period for those who worked more than 10 hours. Plaintiff waived her second meal period. At her deposition, plaintiff testified a break nurse or a charge nurse relieved her for meal periods and that she always received a meal break by the end of her shift. Plaintiff did not recall missing a meal period or notifying a supervisor about a missed meal period. She could not remember a supervisor interrupting her meal periods with work-related questions or requests. Plaintiff's supervisors never told her to end a meal break early; she was never discouraged from taking a meal break. Together this evidence establishes QVMC provided meal breaks required by law. (*Brinker, supra,* 53 Cal.4th at pp. 1004, 1040 ["employer's obligation is to relieve its employee of all duty" during meal period, but "need not ensure that no work is done"]; *Donohue, supra,* 29 Cal.App.5th at p. 1092 [employer had a "complete defense" to meal period violation claim].)

QVMC also provided rest breaks as required by law. Hospital employees received a 15-minute rest period for every four hours of work. At her deposition, plaintiff admitted her supervisors did not discourage her from taking rest breaks; she acknowledged her supervisors did not tell her to cut her breaks short. Plaintiff could not remember a supervisor interrupting her rest periods with work-related questions or requests. When plaintiff's co-

workers asked her questions, plaintiff told them she was on a break, and they left her alone. Plaintiff did not recall complaining to a supervisor about rest periods.

For a portion of the relevant time period, plaintiff affirmed she was provided with her meal and rest breaks when she clocked out of her shift. The few times that plaintiff did miss a break, she reported it and received an extra hour of pay pursuant to the hospital's practice of paying a premium for a missed break "whenever . . . requested." Viewed as a whole, this evidence demonstrates QVMC provided rest periods as required by law. (See *Augustus v. ABM Security Services, Inc.* (2016) 2 Cal.5th 257, 264 [discussing scope of employer's obligation to provide off-duty rest periods].)

As she did in the trial court, plaintiff relies on her declaration in an effort to establish a triable issue of fact. The trial court was not persuaded, and neither are we. The gist of plaintiff's declaration is charge nurses looked at the clock while plaintiff was on her breaks, which she interpreted as a signal to cut her breaks short. Assuming for the sake of argument charge nurses are supervisors—an issue we need not decide—this evidence does not support a reasonable inference plaintiff was pressured to end her breaks early. Plaintiff's generic comment does not create a triable issue of fact regarding interrupted or insufficient breaks, particularly in light of her specific deposition testimony that a supervisor never told her to end her break early, never discouraged her from taking a break, and never told her to work while she was taking a break. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [party cannot create triable issue of fact by relying on a declaration contrary to deposition testimony].)

Notably absent from plaintiff's briefing is a single case where a supervisor's glance at a clock constituted coercion or pressure sufficient to

11

undermine a formal policy of providing meal and rest breaks. This case bears no resemblance to the cases cited by our high court in *Brinker, supra,* 53 Cal.4th at page 1040, such as *Dilts v. Penske Logistics, LLC* (S.D.Cal. 2010) 267 F.R.D. 625, 638, where employees had no way to report missed meal breaks and the employer enforced an informal anti-meal-break policy through " 'ridicule' or 'reprimand.' "

Plaintiff's opening brief does not cite *Donohue, supra,* 29 Cal.App.5th 1068, which is on point. There, the trial court granted summary adjudication for the employer on the plaintiff's meal period claim. (*Id.* at p. 1086.) In urging the appellate court to reverse, the plaintiff relied on her deposition testimony, where she suggested she was denied a full meal period because she was pressured to keep working. (*Id.* at p. 1091.) The *Donohue* court held this testimony did not defeat the employer's motion for at least two reasons. First, *Donohue* determined the deposition testimony did not address the undisputed evidence that the employer had a procedure for employees to report potential meal period violations, and that the plaintiff failed to inform the employer "of any such violation." (*Ibid.*) Second, *Donohue* determined the plaintiff's testimony failed to create a triable issue because it was inconsistent with the certified statement she submitted with each timesheet stating she either received an opportunity to take meal breaks or reported the missing break.

*Donohue* applies here. As in *Donohue*, QVMC had a mechanism for employees to report potential meal and rest period violations. And with the exception of a few isolated instances, plaintiff failed to report any such violation. (*Donohue, supra,* 29 Cal.App.5th at p. 1091.) She also affirmatively stated in her time correction sheets that she received breaks. Like *Donohue*, plaintiff's declaration does not create a triable issue of fact

12

because, as discussed above, it is inconsistent with her deposition testimony, where she could not remember missing a meal or rest period; could not remember having a supervisor interrupt her meal or rest breaks or being discouraged by a supervisor from taking a meal or rest period; and could not remember raising any concerns about meal periods with her supervisor. Plaintiff's cursory attempt to distinguish *Donohue* in her reply brief is not persuasive.

Plaintiff's reliance on *Alberts, supra,* 241 Cal.App.4th 388 does not persuade us the court erred by adjudicating the meal and rest period claims in QVMC's favor. In that case, plaintiffs alleged a hospital systematically discouraged nurses from taking meal and rest breaks, covered up missed meal periods, and forced nursing staff to work after their shifts ended. (*Id.* at pp. 415–417.) *Alberts* held the trial court erred by failing to certify meal and rest break subclasses because plaintiffs' theory of liability presented a common question suitable for class treatment, and because plaintiffs offered substantial common evidence to support that theory. (*Id.* at pp. 401, 412, 414.)

*Alberts*—a class certification case—has no application in this appeal from a grant of summary judgment. Class certification is a procedural question that does not ask whether an action is legally or factually meritorious. Summary judgment, in contrast, is a merits question. (*Donohue, supra,* 29 Cal.App.5th at p. 1087 [rejecting reliance on class certification case in a summary judgment appeal].) *Alberts* is also factually distinguishable.

13

## II.

### *Rounding Claim*

In California, an employer may use a rounding policy if it "is fair and neutral on its face and '. . . is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.' " (*See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 907.) "[C]ourts have upheld an employer's rounding policy if ' "on average, [it] favors neither overpayment nor underpayment," ' but have rejected timekeeping policies that ' "systematically undercompensate[] employees" ' such as where the employer's rounding policy ' "encompasses only rounding down." ' " (*See's Candy II, supra*, 7 Cal.App.5th at p. 249.)

Whether a rounding policy will "result in undercompensation *over time* is a factual" issue. (*See's Candy Shops, Inc. v. Superior Court, supra*, 210 Cal.App.4th at p. 912.) Summary adjudication on a rounding claim may be appropriate where the employer can show the rounding policy does not systematically underpay the employee, even if the employee loses some compensation over time. (*Corbin, supra,* 821 F.3d at pp. 1076–1077 [upholding summary judgment for employer and rejecting argument that any loss of employee compensation invalidated rounding policy]; *Ferra v. Loews Hollywood Hotel, LLC* (2019) 40 Cal.App.5th 1239, 1255, review granted Jan. 22, 2020, S259172 [affirming summary adjudication on rounding claim and holding a rounding "system can be fair or neutral even where a small majority loses compensation"]; *AHMC Healthcare, Inc. v. Superior Court* (2018) 24 Cal.App.5th 1014, 1026 [summary adjudication for employer proper despite evidence some employees "suffered minor losses in compensated time"].)

14

Here, QVMC's rounding policy "is neutral on its face. It 'rounds all employee time punches to the nearest quarter-hour without an eye towards whether the employer or employee is benefitting from the rounding.' " (*AHMC Healthcare, Inc. v. Superior Court, supra,* 24 Cal.App.5th at p. 1027.) It is also neutral in practice. (*Corbin, supra,* 821 F.3d at p. 1079.) The rounding policy did not systematically undercompensate plaintiff: sometimes, in a given pay period, she gained minutes and compensation; sometimes she lost minutes and compensation. (*Ibid.*) The overall loss of .26 percent in compensation over the relevant time period is statistically meaningless. (*Ferra v. Loews Hollywood Hotel, LLC, supra,* 40 Cal.App.5th at pp. 1253–1254 [rounding system neutral even where the plaintiff lost time in 55.1 percent of shifts]; *AHMC Healthcare, Inc. v. Superior Court, supra,* at p. 1028 [rounding system neutral, even though some employees lost 2.33 minutes per shift]; *See's Candy II, supra,* 7 Cal.App.5th at p. 250 [evidence that the plaintiff had a shortfall *and* a surplus demonstrated rounding policy was "mathematically neutral over time"].)

Under the authorities discussed above, QVMC satisfied its burden of establishing the rounding policy is lawful. (*See's Candy II, supra,* 7 Cal.App.5th at p. 250.) Plaintiff's bare assertion she is "owed 7.75 hours of wages" does not create a triable issue of fact,[4] and her brief argument to the contrary is not persuasive because it is premised on the mistaken assumption that the trial court applied the federal Fair Labor Standards Act of 1938's de

_____

[4] The court excluded a portion of plaintiff's expert declaration, a ruling plaintiff does not challenge on appeal. Assuming for the sake of argument Woolfson's opinion was admissible, it does not create a triable issue of fact because Woolfson did not analyze the rounding policy or plaintiff's timesheets and did not consider evidence that plaintiff may have gained compensable work time under the rounding policy. (*Donohue, supra,* 29 Cal.App.5th at p. 1085.)

15

minimis doctrine (29 U.S.C. § 201 et seq.) when adjudicating her rounding claim. The de minimis doctrine does not apply to wage and hour claims brought under California law (*Troester v. Starbucks Corp.* (2018) 5 Cal.5th 829, 834, 848) and the trial court did not apply that doctrine when granting QVMC's summary judgment motion.

## DISPOSITION

The judgment is affirmed. QVMC is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

_____

Jones, P. J.

WE CONCUR:

_____

Simons, J.

_____

Burns, J.

A157336

Filed 6/30/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| JOANA DAVID,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>QUEEN OF THE VALLEY<br>MEDICAL CENTER,<br><br>     Defendant and Respondent. | A157336<br><br>(Napa County<br>Super. Ct. No. 26-67321) |

THE COURT:

The opinion in the above-entitled matter filed on June 8, 2020, was not certified for publication in the Official Reports. On June 26, 2020, a request for publication was received from Queen of the Valley Medical Center pursuant to California Rules of Court, rule 8.1120(a)(1). As this court's opinion is not yet final, we accept the request for publication for filing.

For good cause appearing, this court grants the publication request and orders the opinion certified for publication pursuant to California Rules of Court, rule 8.1105(b), (c).

Date_____          _____P.J.

Superior Court of Napa County, Victoria Wood, Judge.

Mallison & Martinez, Stanley Scott Mallison, Hector R. Martinez and Liliana Garcia for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Derek Richard Havel, Daniel J. McQueen and Matthew A. Tobias for Defendant and Respondent.